(96 South. 928)

**LITTLE et al. v. LITTLE. (6 Div. 799.)**

(Supreme Court of Alabama. April 15, 1923.
Rehearing Denied June 14, 1923.)

**1. Wills ⬅═50—Testator clearly understanding business and remembering property, objects of bounty, and desired distribution, held competent, though old, ill, and depressed.**

A testator clearly understanding the business in which he was engaged, and remembering his property, the objects of his bounty, and the manner of distribution he wished to make among them, was of disposing mind and memory, though aged and diseased and much depressed by the recent death of his wife.

**2. Wills ⬅═163(2)—Doctrine of "confidential relations" raises presumption of undue influence and imposing on dominant party burden of proof.**

The doctrine of confidential relations, though technical, is not futile nor one of general or indiscriminate suspicion, but is a doctrine of high policy, which accomplishes results by presuming the probability of undue influence by the dominant party and imposes on him the burden of proving that his benefit from the other's will was conferred by an act of free will on donor's part.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Confidential Relation.]

**3. Wills ⬅═163(2)—No presumption of dominance of child benefiting by father's will.**

There is no presumption of the dominance of children benefited by the will of their father, the presumption ordinarily moving to the contrary.

**4. Wills ⬅═163(8)—Common residence of testator and beneficiary and contestant's exclusion from testator's bounty raise no presumption of undue influence.**

Common residence of testator and beneficiary and exclusion of contestant from testator's bounty raise no presumption of undue influence, though they should be considered with other evidence.

**5. Wills ⬅═163(6)—Burden on contestant to prove other beneficiaries' dominance over testator and their active interference in procuring execution of will.**

In a will contest by testator's son, who was named as a beneficiary only to the extent of advancements made by testator, who gave the rest of his property to his other sons, the burden was on contestant to prove the latters' dominance over testator and their active interference in procuring the execution of the will.

**6. Wills ⬅═55(1), 166(1)—Want of testamentary capacity and beneficiaries' dominance over or interference in procuring execution of will by testator held not shown.**

In a will contest, evidence *held* insufficient to show that the will was executed under circumstances of weakness or infirmity affecting testator's testamentary capacity, that he was dominated by defendant beneficiaries, or that the latter interfered in procuring or directing execution of the will.

**7. Wills ⬅═152—Unambiguous will of competent testator not set aside for mistake in estimating value of advances bequeathed to son as equivalent to shares of other sons.**

A will will not be set aside, because of testator's mistake in stating accounts with his sons, to one of whom he bequeathed only the amount of advances made to him as being as much as the shares bequeathed to the other sons, in the absence of evidence that his estimate of the value of his property or the amounts advanced were affected by any action or exertion of influence by the other sons, or evidence of any other fraud.

Appeal from Circuit Court, Tuscaloosa County; Henry B. Foster, Judge.

Bill by Richard Harris Little against John Little and another. From a decree for complainant, respondents appeal. Reversed and rendered.

Washington Moody and Foster, Verner & Rice, all of Tuscaloosa, for appellants.

A mistake which results from an error of judgment after investigation, or from a willful or negligent failure to make an investigation by means of which the truth could be readily ascertained, is not a mistake which invalidates a will. Young v. Mallory, 110 Ga. 10, 35 S. E. 278; Dibble v. Currier, 142 Ga. 855, 83 S. E. 949, Ann. Cas. 1916C, 1; Taylor v. McClintock, 87 Ark. 243, 112 S. W. 405; In re Scott's Estate, 128 Cal. 57, 60 Pac. 527; In re Kendrick's Estate, 130 Cal. 360, 62 Pac. 605; Bauchens v. Davis, 229 Ill. 557, 82 N. E. 365; Friedersdorf v. Lacy, 173 Ind. 429, 90 N. E. 766; Bean v. Bean, 144 Mich. 599, 108 N. W. 369; Sibley v. Morse, 146 Mich. 463, 109 N. W. 858; Leffingwell v. Bettinghouse, 151 Mich. 513, 115 N. W. 731; Davenport v. Davenport, 67 N. J. Eq. 320, 58 Atl. 535; Clapp v. Fullerton, 34 N. Y. 190, 90 Am. Dec. 681; In re Cline's Will, 24 Or. 175, 33 Pac. 542, 41 Am. St. Rep. 851; In re Diggins' Estate, 76 Or. 341, 149 Pac. 73. In the absence of mental incapacity or undue influence, a mistaken idea of the nature and extent of one's property will not invalidate a will. Holmes v. Campbell College, 87 Kan. 597, 125 Pac. 25, 41 L. R. A. (N. S.) 1126, Ann. Cas. 1914A, 475. Undue influence, to vitiate a will, must have an effect upon the testator's mind equivalent to that of coercion or fraud; must destroy its freedom of choice and action. Neither confidential relations nor unequal distribution of property is, of itself, evidence of undue influence. Smith v. Smith, 174 Ala. 205, 56 South. 949; Phillips v. Gaither, 191 Ala. 87, 67 South. 1001; Johnson v. Johnson, 206 Ala. 523, 91 South. 260; Bancroft v. Otis, 91 Ala. 279, 8 South. 286, 24 Am. St. Rep. 904; Mullen v. Johnson, 157 Ala. 262, 47

⬅═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

South. 584; Jones v. Brooks, 184 Ala. 115, 63 South. 978; Scarborough v. Scarborough, 185 Ala. 468, 64 South. 105; Cunninghame v. Herring, 195 Ala. 469, 70 South. 148; McElhaney v. Jones, 197 Ala. 303, 72 South. 531; Barnett v. Freeman, 197 Ala. 142, 72 South. 395; Betz v. Lovell, 197 Ala. 239, 72 South. 500; Burney v. Torrey, 100 Ala. 157, 14 South. 685, 46 Am. St. Rep. 33; Councill v. Mayhew, 172 Ala. 295, 55 South. 314. If testator had memory and mind enough to recollect the property he was about to bequeath, the persons to whom he wished to will it, and the manner of disposition, he had, in contemplation of law, a sound mind; and great age, bodily infirmity, and impaired mind will not vitiate a will made by one possessing such capacity. Taylor v. Kelly, 31 Ala. 59, 68 Am. Dec. 150; West v. Arrington, 200 Ala. 420, 76 South. 352; Mullen v. Johnson, supra; Watkins v. Yeatman, 189 Ala. 370, 66 South. 707; Council v. Mayhew, supra; McBride v. Sullivan, 155 Ala. 166, 45 South. 902.

Edgar L. Clarkson, of Tuscaloosa, and R. B. Evins, of Greensboro, for appellee.

The legal fraud and imposition practiced which requires that the will in question be set aside is the commingling together of undue influence exercised by the respondents upon the testator while in a fiduciary relation to him, and at a time when testator was an old man, weighed down by disease and grief, which had caused a weakening of his physical and mental condition; and these, combined with prejudicial treatment of the statements about the disinherited brother, resulted in the mistake of fact set out in the will, and the execution of the unnatural document, which did not express the purpose and intention of the testator. The mistake in the will is proof of mental condition and undue influence. Fountain v. Brown, 38 Ala. 72; Gilbert v. Gilbert, 22 Ala. 529, 58 Am. Dec. 268; Lyons v. Campbell, 88 Ala. 462, 7 South. 250; Higginbottom v. Higginbottom, 106 Ala. 314, 17 South. 517; Roberts v. Trawick, 17 Ala. 55, 52 Am. Dec. 164; Garrett v. Heflin, 98 Ala. 615, 13 South. 326, 39 Am. St. Rep. 89; Coghill v. Kennedy, 119 Ala. 641, 24 South. 459; Ex parte Little, 205 Ala. 517, 88 South. 645; Burney v. Torrey, 100 Ala. 173, 14 South. 685, 46 Am. St. Rep. 33; Meier v. Buchter, 197 Mo. 68, 94 S. W. 883, 6 L. R. A. (N. S.) 202, 7 Ann. Cas. 887; 28 R. C. L. 100; Eastis v. Montgomery, 93 Ala. 293. 9 South. 311; Rood on Wills, § 171; Thompson on Wills, § 530; 7 Ann. Cas. 894, note; Redfield on Wills (4th Ed.) 518; Underhill on Wills, 105.

SAYRE, J. Dr. John Little executed his last will and testament containing the following items:

"Second. My son, Richard Harris Little, has received advancements from me during my lifetime and I have made various loans to him from time to time which are now due me and are evidenced by notes and mortgages which amount fully as much as if not more than his distributive share in my estate, and all such advancements and loans and indebtedness and papers I give and bequeath to my said son Richard Harris Little and direct my said executors hereinafter named to deliver to him all such evidences of said indebtedness to him as may be in my possession at the time of my death and to fully receipt and discharge him in full from all liability to my estate; and the cancellation of such debts together with the advancements made him shall be his full and complete share in my estate and he shall not otherwise participate or share in any other part thereof.

"Third. All other property of every kind and character, of which I may die seized and possessed or to which I may be entitled at the time of my death, I give, devise and bequeath to my other two sons, Robert Irving Little, of Tuscaloosa, and Rev. John Little of Louisville, Ky., absolutely and in fee simple share and share alike."

In the fourth paragraph of the will Robert Irving Little and John Little, sons of testator, were appointed executors and their powers defined.

The will was admitted to probate without contest, but within 12 months thereafter, Richard Harris Little, another son, proceeding under section 6207 of the Code, filed the bill in this cause contesting the validity of the will on the grounds of mental incapacity of testator; of "undue influence" exercised by the beneficiaries (by which term we refer to Robert Irving and John, though Richard Harris was named as a recipient of testator's bounty in that he was acquitted of debts to testator); and on the ground of mistake and fraud. No fraud, other than undue influence, is averred, but it is averred that testator's statement that contestant had received loans and advancements to an amount equal to or in excess of what would have been his distributive share in testator's estate was the result of a mistaken estimate on his part of the value of his estate. The judge of the circuit court, sitting as chancellor, expressed at some length his opinion of the case presented by the pleadings and evidence and thereupon found the facts to be as follows:

"Upon consideration of the pleadings and the evidence, the court finds that the instrument filed in this cause purporting to be the last will and testament of John Little, deceased, is null and void; that the execution of same was procured by the exercise of undue influence over the testator by the beneficiaries under said will; that this undue influence extended over a considerable period of time and resulted in the execution of a will which expressed the purpose and intention of the two said beneficiaries and not the intention and pur-

pose of the testator; that the statement in the will that Richard Little had received his share of the estate was a mistake made by the testator by reason of the fact that he undertook to state an account between his sons and himself while he was in a weakened physical condition, and this mistake was strongly probative of the weakened mental condition of testator; that the will was executed at the time when the testator was in a weakened mental and physical condition; that this undue influence exerted upon the testator by the beneficiaries under the will who stood in a confidential and fiduciary relation to the testator, caused the execution of the will while in such weakened physical and mental condition."

The decree was that the will be revoked, annulled, and declared void, that the probate thereof be set aside, and that the estate of Dr. John Little, deceased, be administered as required by law. The executors and beneficiaries have appealed.

We have quoted the decree; but we think its conclusions may, for the purpose of the statement we are to make, be correctly and with some advantage epitomized as follows: That testator executed the will at a time when he was in a weakened physical and mental condition and it was the result of undue influence extending over a considerable period of time and exercised by the beneficiaries who stood in a confidential and fiduciary relation to him; that testator's statement that Richard Harris Little had received his share of the estate was a mistake brought about by the fact that he undertook to state an account between his sons and himself while in a weakened physical condition, and this mistake tends strongly to prove his weakened mental condition.

Upon due consideration of the entire record, which, we venture to say, has been unprofitably amplified, the court here, without undertaking to review in detail the evidence, states its conclusions as follows:

[1] Testator went alone to his lawyer on November 29, 1918, and gave instructions concerning the will he desired to execute; on the next day he executed the will, which had been prepared according to his directions, in the presence of four witnesses, officers and employees of the bank in which for many years he had been an officer, holding positions of high responsibility. The testimony of these and numerous other witnesses, who had known testator intimately and well for many years, leaves no doubt in our mind that testator, though far advanced in years, feeling the inroads of the diseases that carried him off two months later, and much depressed by the then recent death of his wife, the companion of a lifetime, had still a clear understanding of the business in whch he was then engaged, remembered his property, the objects of his bounty, and the manner of the distribution he wished to make among them —was, in short, of disposing mind and mem-ory. West v. Arrington, 200 Ala. 420, 76 South. 352; Taylor v. Kelly, 31 Ala. 59, 68 Am. Dec. 150; Councill v Mayhew, 172 Ala. 307, 55 South. 314, where cases are cited.

[2-5] As for the charge of undue influence it rests upon the technical doctrine of confidential relations—not that contestant, appellee, has attempted any strained application of the doctrine, but that the doctrine itself rests upon technical grounds. It is, however, no futile doctrine; nor, on the other hand, as we have heretofore said, is it a doctrine of general and indiscriminate suspicion. Curry v. Leonard, 186 Ala. 666, 65 South. 362; Betz v. Lovell, 197 Ala. 242, 72 South. 500. It is a doctrine of high policy and moves along ascertained paths to definite results. It accomplished results by presuming the probability of undue influence on the part of the dominant party to the relation and imposing upon him the burden of proving that his benefit was conferred by an act of free will on the part of the donor. The relation of parent and child is per se confidential. Noble v. Moses, 81 Ala. 530, 1 South. 217, 60 Am. Rep. 175. But that alone in this case proves nothing—tends to prove nothing—for there is no presumption of the dominance of the children who have benefited by the will of their father. Scarbrough v. Scarbrough. 185 Ala. 471, 64 South. 105; Hawthorne v. Jenkins, 182 Ala. 255, 62 South. 505, Ann. Cas. 1915D, 707. Ordinarily the presumption moves to the contrary. And the facts of a common residence and the exclusion of contestant from testator's bounty raise no presumption, though they are to be considered in connection with all other evidence in the cause. Hawthorne v. Jenkins, supra. The burden was on contestant to prove the dominance of the beneficiaries named in the will and their active interference in procuring its execution. Bancroft v. Otis, 91 Ala. 279, 8 South. 286, 24 Am. St. Rep. 904; Jones v. Brooks, 184 Ala. 115, 63 South. 978, where the cases are cited. Our judgment is that contestant appellee has sustained neither end of this double burden.

[6] Witnesses, acquaintances, friends, relatives, who had known testator long and well, with one accord testify to the fact that in all the relations of life he was, and remained even until his last hours, a man of fixed convictions, self-reliant, and strong-willed. Far more than the average man, he was cool, deliberate, and self-contained. So the evidence describes him. He suffered some physical manifestations of a fatal disease, had physical infirmities natural to his age, and had recently lost his wife; but, to a remarkable degree, or even altogether, his mental strength and acumen at the time of the execution of the will appear to have been unaffected by these conditions. Previous to the death of his wife, his posthumous affairs had been disposed of by a will leaving all his

property to her absolutely. But that event, in his judgment, made a new disposition desirable, and he thereupon set about to make it with characteristic intelligence and resolution. After that he went back to his daily work, but not for long, and two months later he died. We are not disposed to multiply unprofitable pages in stating the considerations, pro and con, suggested by the evidence and the briefs of counsel. After due deliberation, the court is of opinion that contestant has failed to show that testator's will was executed under circumstances of weakness or infirmity affecting his testamentary capacity, has failed wholly to show that testator was dominated by the beneficiaries of his will, has failed to show that the beneficiaries interfered at all in procuring or directing the execution of the will. Some statements are made by contestant and one or two of his witnesses to the effect that beneficiaries controlled testator and influenced the execution of his will, but these statements were without exception mere conclusions of the witnesses without evidence of supporting facts; whereas, on the other hand, as we have said in effect, the evidence as to testator's mental capacity, his strength of character, and selfreliance—even a noticeable reserve, not to say secretiveness—in the conduct of his affairs, along with the absence of any evidence of efforts to give direction to his purposes, suffices to produce in our mind the strong conviction that the will in dispute should be left to stand as the free product of a sound and disposing mind and memory, as testator's valid last will and testament.

[7] Much of the evidence has been directed to the question whether testator made a mistake in his recital that contestant had received in the way of advancements and loans as much as, if not more than, his distributive share of testator's estate. The decree, to quote it again in part, recites that this judgment of testator "was a mistake made by the testator by reason of the fact that he undertook to state and account between his sons and himself while he was in a weakened physical condition, and this mistake was strongly probative of the weakened mental condition of testator." Earnestly, contestant contends that testator's estimate of the amount of his advancements and secured loans to contestant, and his estimate of the value of his estate as well, were far wide of the mark of accuracy, and in the brief the notion is emphasized that testator intended upon the whole to deal equally with his three sons, and that, if a mistake was made, to sustain the will as written by testator would perpetuate a great wrong, whereas, to set aside the instrument would accomplish testator's general purpose without costing beneficiaries anything, for, in any event, contestant must be charged with the amounts so received by him. And from this possibly it may be in-

ferred that this argument became one of the pillars of the decree. But this appeal to expediency, this invocation of experimental equity, cannot be allowed for several reasons. It may be conceded that testator was ultraconservative in his judgment as to the value of his real estate in Tuscaloosa, and even that his estimate of the amounts he willed to charge against contestant was not correct altogether; but his estimate was, of course, based upon property values as he knew them, and his error, if any, was not great, and would not seriously affect the equality of contestant's participation in testator's estate, advancements and loans being charged to him. What is assumed, from tax returns and like indicia, to have been testator's estimate of the value of his real estate, is well supported in the evidence as of the time of the execution of the will; whereas, the witnesses who have testified to the far greater values for which contestant contends appear to have based their opinions upon property values in Tuscaloosa two or three years after the death of testator and at a time when all values had greatly advanced. But if testator's estimate was too conservative, we are not advised of any right to review his judgment or of any grounds of law or equity upon which such review might proceed. There is no precedent for such a proceeding. As for the amounts testator is assumed to have charged against contestant, the different statements proposed by contestant and the beneficiaries named in the will rest upon their different opinions as to the justice and propriety of the several items involved. The will shows that testator considered that in advancements and loans contestant had received fully as much as, if not more than, his distributive share of testator's estate; but there is no evidence as to the items he considered in arriving at that conclusion, nor do we deem it necessary, assuming our ability to do so, to state the account in the fashion of bookkeepers. There is evidence that during the seven or eight days elapsing between the death of his wife and the execution of his will testator went over his letters and papers, destroying many of them; but there is no evidence that he undertook any precise statement of the accounts between himself and his sons or any one of them. Evidently, we think, he made merely a broad general estimate of the value of his estate as he had been accustomed to value it and of the amounts he had advanced and lent to contestant, and upon such estimate concluded he had done as much for contestant as his will would do for his other sons; and he was not far wrong. But whether so or not, and apart from the charges of incapacity and undue influence heretofore considered, it is a complete answer to the theory and argument advanced at this point that, if there was the great mistake alleged, it cannot be

corrected without making a new will for testator McAlister v. Butterfield, 31 Ind. 25; Eichelberger's Estate, 135 Pa. 170, 19 Atl. 1006, 1014; 40 Cyc. 1924; 1 Redf. on Wills, star page 498 et seq. We do not overlook the fact that the prayer of the bill and the effect of the decree is that the will be set aside and annulled in toto; we have in mind at this point the suggestion that a correct statement of the account, and an annulment of the will on the ground of mistake, would accomplish all the will as written shows that testator desired to accomplish. The will, then, must be set aside on the sole ground of the mistake alleged, or it must stand as testator wrote it, and in the solution of the issue thus proposed, the language of the instrument in itself being entirely clear, no implication or expression of testator's will, other than that found in the will itself, can be considered. In other words, quoting the language of the New Jersey Court of Errors and Appeals in Re Gluckman, 87 N. J. Eq. 638, 101 Atl. 295, L. R. A. 1918D, 742:

"Where a testator, in addition to complete testamentary mental capacity, is in full enjoyment of average physical and educational faculties, it would seem that in the absence of fraud or undue influence, a mistake, in order to defeat probate of his entire will, must in substance or effect really amount to one of identity of the instrument executed; as, for instance, where two sisters, in one case, or a husband and wife, in another, prepared their respective wills for simultaneous execution and through pure error one executed the other's and vice versa. [Citing cases.] Short of this, however, or of something amounting, in effect, to the same thing, it is against sound public policy to permit a pure mistake to defeat the duly solemnized and completely competent testamentary act. It is more important that the probate of the wills of dead people be effectively shielded from the attacks of a multitude of fictitious mistakes than that it be purged of wills containing a few real ones. The latter a testator may by due care, avoid in his lifetime. Against the former he would be helpless."

This statement will suffice to exclude the notion that a mistake imposed on testator by the representations or procurement of the beneficiaries, or others interested for them, may not afford just ground for setting aside a will. In such case, no doubt, the will would be held void to the extent at least it was affected by the mistake, for that would amount to fraud. In the present case the evidence has been examined with a view to the decision of this question, and we feel constrained to say that upon the record no reason whatever appears for holding that testator's estimates of the value of his property or of the amounts chargeable to contestant were in the least affected by action or conduct on the part of his other sons or that there was any effort on their part to exert

any influence upon the conclusions in that respect reached by testator. Nor is there evidence of fraud of any other character.

It results that the decree setting aside the will must be reversed and one here rendered dismissing contestant's bill of complaint.

Reversed and rendered.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.