197 So.2d 447

Reba Turner CLARK et al.

v.

William Orester CLARK et al.

4 Div. 258.

Supreme Court of Alabama.

Feb. 16, 1967.

Rehearing Denied April 13, 1967.

W. J. Williamson, Williamson & Taber, Greenville, Robt. B. Albritton, Albritton & Rankin and Hiram J. Brogden, Jr., Andalusia, for appellants.

Griffin Sikes, Jas. M. Prestwood and F. B. McGill, Andalusia, for appellees.

646

SIMPSON, Justice.

This is a will contest. The appellants are the widow of the decedent and the executor named in his will dated January 10, 1961, with a codicil dated August 27, 1963. The appellants are the proponents of the will. The appellees are the five children of decedent by a prior marriage. They are the contestants of the aforementioned will.

The appellees filed a bill contesting the will dated January 10, 1961, on the ground of undue influence exerted over the testator by his widow, Mrs. Reba Turner Clark, and further contended that the codicil dated August 27, 1963 revoked the will dated January 10, 1961, and revived a prior will dated December 20, 1960.

After a lengthy trial the case went to the jury on the two issues raised, i. e. undue influence and the effect of the codicil revoking the January 10, 1961 will and reviving the December 20, 1960 will. The jury returned a general verdict in favor of the contestants. This appeal followed.

Briefly, the facts are:

Mr. Bury Clark was a resident of Covington County, Alabama, until he died in October, 1963. On December 27, 1957 he, a widower, married Mrs. Reba Turner, a widow. They lived together as man and wife from the day of their marriage until the death of Mr. Clark. At the time of the marriage all of the five children of Mr. Clark were over twenty-one years of age and all were living away from Mr. Clark's home.

During the summer of 1960 Mr. Clark consulted Mr. Hiram Brogden, Jr., a member of the Andalusia bar, regarding the disposition of his estate. He was interested in disposing of his estate in a manner which would avoid unnecessary payment of federal estate tax. After several consultations, it was decided by Mr. Clark and his attorney that Mr. Clark would divide his real property by deed to his five children, retaining a life estate in the 120 acre home site to himself and his wife. He owned 840 acres of real estate, with 80 acres of this amount being held under a deed conveying the same to Clark and his first wife as tenants in common. To accomplish his plan to divide the entire 840 acres among his five children, his attorney drafted deeds from the five children to Clark releasing the interest of each in the 80 acres held by him and the mother (deceased) of the children as tenants in common. He further drew deeds from Clark to each of the five children dividing the entire 840 acres, reserving a life estate in 120 acres comprising the "home place".

After these deeds were drafted Mr. Clark asked each of his children to come to Andalusia and execute the deed to the 80 acre tract held as tenants in common by him and their deceased mother. One of his daughters refused to sign this deed, so that the five individual deeds to each of the children dividing the entire 840 acres were never signed.

Thereafter, Mr. Clark consulted with his attorney with regard to disposing of his

estate by will. Mr. Brogden drafted several wills from time to time and Mr. Clark studied them and made suggestions and changes. On December 20, 1960 Mr. Clark executed a will in the presence of two witnesses and his executor therein named, Mr. Simmons, an officer of the Commercial Bank of Andalusia. The original was deposited with the bank for safekeeping. A receipt was given for the will dated December 20, 1960, and placed in Mr. Brogden's files. The evidence is that this will left to the children the parcels of property covered in the deeds which were never executed, retaining a life estate for the testator and his wife in either 120 acres or the entire 840 acres. The evidence is not entirely clear on this point.

Thereafter, Mr. Clark returned to his attorney's office and requested that he prepare a new will so that a change might be made in the disposition of the remainder interest in a particular 40 acre tract. He wanted to take this 40 acres from the daughter named in the will of December 20 and give it to another child. Mr. Brogden drew up a new will making the requested change in the disposition of the remainder interest in this particular 40 acres.

The new will was taken to Mr. Simmons at the Commercial Bank of Andalusia. This new will was executed by Mr. Clark in the presence of two witnesses, employees of the bank and in the presence of Mr. Clark's attorney. At that time Mr. Simmons returned to Mr. Clark the December 20, 1960 will. Mr. Clark physically destroyed the will in the presence of Mr. Simmons and Mr. Brogden and after tearing it to some extent asked Mr. Brogden to finish destroying it. The destroyed will was placed in the trash basket at the bank. The new will was dated January 10, 1961. It remained in the vaults at the Commercial Bank until Mr. Clark's death.

There the matter rested until the summer of 1963, Mr. Clark's last summer. During that time his death was imminent. He called his attorney's office and asked that he come to see him about making some arrangements to have the 1963 crops gathered in the event he died before they were harvested. Mr. Brogden was out of town. His father, Mr. Brogden, Sr., called him and asked what should be done. He suggested a codicil to the will. Acting upon this suggestion the senior Mr. Brogden and the junior Mr. Brogden's secretary went to Mr. Clark's home where the following codicil was dictated:

"STATE OF ALABAMA

"COVINGTON COUNTY

"KNOW ALL MEN BY THESE PRESENTS, That I, Bury Clark, a resident of Covington County, Alabama, being over the age of twenty-one years and of sound mind and disposing memory, do make, publish and declare this to be a Codicil to my Last Will and Testament, executed by me on December 20, 1960, and deposited with The Commercial Bank, Andalusia, Alabama, for safekeeping. This Codicil is to be made a part of my Last Will and Testament and designated as the Ninth paragraph.

"NINTH

"Due to illness which prevents me from looking after my affairs, I have entered into an agreement with my son, William Orester Clark, to look after the harvesting and selling of the 1963 crops in which I have an interest. Under this agreement, William Orester Clark is to see that all crops are harvested and that Grover Williamson is to receive his one-half interest in the crops grown by him, after the amount he owes me is deducted, and that my share of the 1963 crops is to be sold and the money deposited to the credit of Bury Clark in the Commercial Bank, Andalusia, Alabama; William Orester Clark is to bring all receipts for crops sold and deposit receipts to me, or in case of my death, to my heirs. In the event of my death before the 1963 crops are all harvested and sold, I direct my Executor

to allow William Orester Clark to continue to look after the harvesting and selling of the crops until all 1963 crops are harvested.

"However, in the event there is disagreement among my heirs, my executor shall employ some person he deems capable to take over and look after harvesting and selling the 1963 crops.

"Witness my hand this 27th day of August, 1963.

"/s/ Bury Clark"

The record indicates without discrepancy that at the time of the execution of the aforementioned codicil that several of the contestants were present; that at no time did Mr. Clark mention any intention of revoking the January 10, 1961 will and no mention was made of reviving the December 20, 1960 will. At the time of the execution of the codicil the December 20, 1960 will had been destroyed. There was no copy of it in existence. The secretary of Mr. Brogden, Jr. who typed the codicil testified that she put the December 20, 1960 date in the codicil when she looked in her file and found that the receipt initially given by the Commercial Bank indicated that the will was dated December 20, 1960. She says it was her mistake and that the only copy of any will of Mr. Clark which they had in their office was the January 10, 1961 will. She further testified that it was the custom to destroy copies of all but current wills of the clients and that there is no copy of the December 20, 1960 will in existence.

■ Let us first look to the contention of appellees-contestants that the above codicil effectively revoked the last will, dated January 10, 1961, and effectively revived the December 20, 1960 will. In that connection, it seems to be conceded by all parties that the December 20, 1960 will was effectively revoked by the action of the testator in executing the later January will and in physically destroying the December will. In fact, the action of the testator

in this regard is in complete accord with the statute on revocation of wills (Title 61, § 26, Code) and it appears abundantly clear to us that the will was revoked at that time.

The mandate of Title 61, § 26, is as follows:

"* * * a will in writing can only be revoked by burning, tearing, cancelling, or obliterating the same, with the intention of revoking it, by the testator himself, or by some person in his presence, and by his direction, or by some other will in writing * * *"

The evidence here is that every requirement for an effective revocation was observed with regard to the December 20, 1960 will.

■■ We come then to the question of whether the codicil of 1963 had the effect of (1) revoking the January 10th will and (2) reviving the December 20th will. Under the facts in this case, which as to this issue are undisputed, we are constrained to hold that it did not. It is clearly the law in this state that after a "good" revocation a will can be revived only by the expressed intention of the testator himself. Allen v. Bromberg, 147 Ala. 317, 41 So. 771. There is not one item of evidence to indicate that the testator had any intention of reviving the December 20th will, other than the insertion of that date in the codicil by the typist, the effect of which we shall discuss shortly. On the other hand, there is nothing to indicate any intention to revoke the January 10th will other than the codicil which referred to the date of the prior, revoked will. In this connection we have held in Fuller v. Nazal, 259 Ala. 598, 67 So.2d 806 that:

"Under our revival statute a codicil may not revoke a last will and revive a prior one by mere implication. For a codicil to have the effect of reviving a will previously revoked by reference to

the date of such prior will, the intention of the testator to revoke the intervening will and *to revive such revoked will must be clearly expressed in the face of the codicil either by express words referring to the prior will as having been revoked and declaring an intention to revive the same* or by a disposition of the testator's property inconsistent with any other intention. *A reference to the revoked will merely by the date of its execution and its subscribing witnesses is not alone sufficient in and of itself to impart such an intent.* Title 61, § 27." (Emphasis added)

We are constrained to hold then, that on the issue of the revocation of the January 10, 1961 will and revival of the December 20, 1960 will, that the law of this state is to the effect that the codicil had no such effect and that the last will of the testator, that of January 10, 1961, remained his last will and testament, subsisting as such on the date of his death. There is no evidence on which the general verdict of the jury could rest on this issue of the case.

We turn now to the only other contention raised by the contestants, that of undue influence exerted over the testator by his wife, Mrs. Reba Turner Clark.

 It has been restated many times that when a will is contested on the ground of undue influence, the burden is on the contestant, in order to raise a presumption of undue influence, to prove a dominant confidential relationship and undue activity in the execution of the will by or for a favored beneficiary. Wilson v. Payton, 251 Ala. 411, 37 So.2d 499; Hyde v. Norris, 250 Ala. 518, 35 So.2d 181.

"The controlling principle on the issue of undue influence is that the contestants must show active interference of the beneficiary in procuring the execution of the will. Lockridge v. Brown,

184 Ala. 106, 63 So. 524. To make out the charge, it must be proved that an influence was exerted on the testator which was tantamount to moral coercion and constrained him to do that which was against his will but which from fear, desire of peace, or some other feeling than affection, he was unable to resist." Stanley v. Kelley, 267 Ala. 379, 102 So. 2d 16.

The evidence in this case is undisputed that the testator was a strong-willed man, who handled his business affairs as he saw fit, up until the date of his death. He consulted with his attorney on numerous occasions about the disposition of his estate; he read a number of drafts of proposed wills and consulted with his attorney about each. At no time did his wife accompany him to his attorney's office. She was not present on any occasion when the will was being discussed; she was not present at the execution of the December 20th will nor at the subsequent execution of the January 10th will. Mr. Clark disposed of his estate by leaving his real property to his five children; he gave to each of them savings bonds amounting to $5,000 prior to his death; he gave each of them by will specific bequests of personal property, which the record shows amounted to approximately $2,300 each; he left his wife a life estate in his real property and the residuary of his personal property, which according to evidence adduced amounts to some $30,000, but which is, of course, subject to claims against the estate and payment of debts. We cannot find under these circumstances any indication of an unnatural disposition of the property involved here.

██ We have carefully read the entire record in this case which consists of some 430 pages. After a careful examination of the evidence offered by the contestants of the will of January 10, 1961, we are persuaded that they have failed to offer sufficient evidence as required

.by our cases to raise a presumption of undue influence on the part of the proponent of this will, the widow of the testator. We are committed to the proposition that:

" 'The mere existence of confidential relations between the testator and the principal beneficiary under his will, who is also the proponent, does not raise the presumption that the will was procured by the exercise of undue influence, nor impose on the proponent the onus of disproving undue influence, fraud, or coercion; there must be, in addition to that fact, evidence of his active interference in procuring the execution of the will, before that presumption arises.' " Cunninghame v. Herring, 195 Ala. 469, 70 So. 148.

As noted earlier, the court submitted this case to the jury on the issues of (1) revocation of the last will executed by the testator and revival of a prior one; and (2) undue influence in procuring the execution of the will. The jury returned a general verdict to the effect that the instrument dated January 10, 1961 was not the last will and testament of the testator. As noted, there is insufficient evidence to support the verdict on either issue. We are aware of the rule that the verdict of the jury is entitled to a strong presumption of correctness. But this rule is qualified by an equally sound one to the effect that where this court after reviewing *all* of the evidence is clearly convinced that the finding is wrong and unjust, we have no alternative but to reverse that finding. We must do so here. It is our conclusion that the evidence is insufficient to support the jury's conclusion on either issue submitted.

Reversed and rendered. (See Little v. Little, 209 Ala. 651, 96 So. 928.)

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.