Appellants Ben Palmer and wife Ida appeal from a jury verdict adjudging Appellees to be the owners of 10 acres of property-the subject matter of this dispute. We reverse and remand.
In 1939, Ben Palmer purchased 19 acres of land for $450.00. The 19 acres were divided by a public road, with approximately 10 acres located north of the road and 9 acres being south of the road. Ben Palmer already owned an additional 80-acre tract which joined the 10 acres on the north side of the road and gave his 80-acre tract access to the public road for the first time. *Page 1052 
In 1949, Ben's brother, Chester, asked Ben to sell him the 9-acre parcel south of the road. There was never any conversation or discussion between the brothers about Chester's buying the 10 acres north of the road. According to Ben, he agreed to sell his brother the 9 acres for $200.00.
Ben and his wife, together with his brother Chester, went to the courthouse in Hamilton and asked Probate Judge Frank Pierce to make the deed for them. According to Ben, he and Chester told the Judge that Chester was buying the land south of the road (the 9 acres), and to make the road the property line. The Judge gave the form deed to one of his secretaries who filled it in. Ben and his wife then signed the deed and gave it to Chester. Neither Ben nor his wife ever again, until immediately prior to this action, saw the deed. Ben maintains that all of the parties were unaware that the deed purported to convey theentire 19-acre tract to Chester rather than just the 9 acres south of the road which had been agreed upon.
Chester took immediate possession of the 9 acres south of the road, while Ben retained possession of the 10 acres north of the road. Ben, in exercising continued possession and apparent ownership of the 10 acres, rented the land to different people who throughout the years used it partly as farmland. In 1957, Ben rented the farmland portion of the disputed tract to the government for a period of 10 years. That lease was extended for an additional 5-year period.
In 1973, Ben cleared the farmland portion of the 10 acres. Additionally, Ben sold pulpwood off the land, hunted thereon, and gave others permission to hunt there. Ben sold a right-of-way from the north side of the county road completely across the 10-acre tract to Alabama Power Company. At the same time, Chester sold a right-of-way from the south side of the road across all of his land. Chester died in 1969. In 1973, Ben and his wife signed a right-of-way deed giving the county access to the north side of the road. Chester's wife, Cora Palmer, signed the same deed conveying to the county a right-of-way on the south side of the road.
Everyone in the community, including Chester Palmer, during his lifetime, and Cora, after her husband's death, recognized the land in question as belonging to the Appellants because of their possession and control thereof. Cora and her son, Billy Gene, who now has record title to the disputed ten acres, both testified that they knew Appellants had claimed the land since the sale by Appellants to Chester Palmer.
In 1978, as a result of tax reappraisals, property owners in Marion County were notified as to what property was assessed to them and what they were paying taxes on. Many people discovered that they had paid taxes for years on property they did not own. The reappraisal revealed that Chester Palmer, and since his death, his wife, were assessed on the 10 acres in question since 1949.
I. Sufficiency of the Evidence to Sustain the Jury's Verdict.
Appellants contend, and we agree, that a review of all the testimony in the case below establishes by a clear preponderance of the evidence that the jury's verdict was palpably wrong and manifestly unjust.
The law is well settled that a presumption of validity accompanies a jury verdict on appeal. But, while this may be the rule, it is not absolute. In Insurance Company of NorthAmerica v. Mays, 278 Ala. 20, 24, 174 So.2d 700, 704 (1965), Justice Lawson, quoting from an earlier case, said:
 "`. . . this court has not renounced its duty nor neglected its power to revise the verdicts of juries and the conclusions of trial judges on questions of fact, where, in our opinion, after making all proper allowances and indulging all reasonable intendments in favor of the court below, we reach a clear conclusion that the finding and judgment are wrong. . . .'"
Put another way, an appellate court should revise a jury verdict or judge's findings if it is "convinced by a preponderance of the evidence that the verdict is *Page 1053 
wrong and unjust." Prescott v. Martin, 331 So.2d 240 (Ala. 1976). See Clark v. Clark, 280 Ala. 644, 197 So.2d 447 (1967);Tallapoosa River Electric Co-op., Inc. v. Burns, 271 Ala. 435,124 So.2d 672 (1960); Barber v. Stephenson, 260 Ala. 151,69 So.2d 251 (1954). Taking into consideration all reasonable inferences and presumptions, our thorough review of the record below leaves us with the conclusion that the jury verdict cannot be supported by the evidence adduced before the trial Court. Although the trial Court erred in submitting the reformation issue to a jury, we need not remand for a nonjury trial of this issue in view of our decision concerning the sufficiency of the evidence.
II. Reformation of the Deed.
Unlike settled rules which govern the substantive law of property, rules of construction are subordinate and yield to the intention of the parties, particularly the intention of the grantor, where such intention can be ascertained. Dickson v.Van Hoose, 157 Ala. 459, 47 So. 718 (1908); Meir-Nandorf v.Milner, 34 Idaho 396, 201 P. 720 (1921); Miller v. Miller,91 Kan. 1, 136 P. 953 (1913). Surely, Appellant's intentions were to convey only the 9 acres requested by Chester Palmer. The credible evidence of record overwhelmingly supports this conclusion.
Mistake of fact is a well-recognized ground for interposition of a court of equity. 13 Am.Jur.2d Cancellation of Instruments
§ 31 (1964). Where it appears that by a mutual mistake of all parties the instrument does not conform to or express their intention or agreement, as where by mistake some material part of the instrument is omitted or the deed is drawn to convey a different interest or a greater or lesser estate than was agreed upon, relief may be had in equity against the other party to the conveyance or his privies. 23 Am.Jur.2d Deeds §§ 155, 158 (1965).
Although a deed in terms expresses the intention of the parties, if there is a material mistake as to the property to which those terms apply, such as to its identity, situation, boundaries, title, amount, value, and the like, a court of equity may grant appropriate relief. Goodrich v. Lathrop,94 Cal. 56, 29 P. 329 (1892).
We are convinced by the great weight (indeed on this issue the evidence is virtually without dispute) of the evidence that Ben and Chester acted under a mutual mistake when their sale was consummated in 1949. Reformation of their deed, therefore, is a proper remedy.
On remand of this cause, the trial Court, in its discretion, dictated by the necessities of the circumstances, may direct that further proceedings be held in order to more specifically delineate the legal description of the 9-acre tract intended to be conveyed.
REVERSED AND REMANDED WITH INSTRUCTIONS.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.