BRADLEY, Judge.
Billy Miller went to Larry Savage Chevrolet, Inc. (hereinafter Larry Savage) on November 5, 1982 for the purpose of trading his 1979 Chevrolet truck for a 1981 four-wheel drive Datsun truck. On that same date Mr. Miller received from a Larry Savage salesman the retail purchase contract, plaintiffs exhibit 3, which showed that the sales price of the 1981 Datsun truck was $9,668. The value of the trade-in of the 1979 Chevrolet truck was $6,370, of which Mr. Miller owed the sum of $2,325.03. After subtracting the amount necessary to pay off the 1979 Chevrolet truck traded in, a new equity was allowed to the plaintiff in the amount of $4,044.97.
The remaining amount to be financed was in the amount of $5,623.37. This amount was to be financed through General Motors Acceptance Corporation. Mr. Miller was informed that it would be necessary for him to have insurance on the 1981 Datsun truck, and Mr. Miller desired for the insurance to be placed with an insurance agency known as the Insurance Market. Mr. Miller was informed that this insurance would cost $315, to be paid in three $105 installments. Mr. Miller told Larry Savage that he did not have the money to pay for the required insurance. Larry Savage in turn told Mr. Miller they would pay the first $105 installment by financing the same or adding the amount to the purchase price of the truck. This amount became a part of the purchase price and was included in plaintiffs contract.
Mr. Miller returned the following day, November 6, 1982, and consummated the sale by signing all of the documents and contracts. On this same date Mr. Miller was informed by Savage’s credit manager that the amount of $105 would be sent to the insurance company. Additionally, he was assured that on that particular day he had insurance in effect.
Mr. Miller left with the 1981 Datsun truck on November 6, 1982, and on November 11, 1982 he received a call from Larry Savage informing him that he needed to go by the Insurance Market and fill out the insurance application. Mr. Miller went by the Insurance Market on November 11, 1982, filled out the insurance application, and was informed that he did not have insurance in effect because Larry Savage had not sent the check. On the same day Mr. Miller returned to Larry Savage and told a salesman what he had been told at the Insurance Market. The salesman, Mr. Johnson, informed Mr. Miller that the check had been sent and that he did in fact have insurance on the truck.
On November 14, 1982 Mr. Miller was involved in an accident with the 1981 Dat-sun truck and it was severely damaged. The truck was taken to Larry Savage where Mr. Miller was informed that he did not have insurance on the truck because Larry Savage had never mailed the check. Mr. Miller never received any type of insurance payment or coverage from any company, including Larry Savage.
Mr. Miller commenced suit by filing a complaint in two counts, one count alleging breach of contract or agreement, and the second count alleging fraud.
Larry Savage denied the allegations and asserted that (1) Mr. Miller was guilty of contributory negligence, (2) the actual cash value of the truck financed was $5,623.34, which was paid by Larry Savage to General Motors Acceptance Corporation, (3) Mr. Miller had not been damaged, and (4) Mr. Miller had no true “equity” in his traded in vehicle.
The evidence at trial showed that Miller had an equity in the truck of $4,044.97 and that the reasonable rental value of a replacement truck would be $24 a day for a *876 period from the date of the accident to the date of trial, or about ten and one-half months, i.e. November 14, 1982 to October 3, 1983, or about $7,300.
The case was submitted to the jury on both counts of the complaint and a general verdict was returned in the amount of $7,587.66.
On October 7, 1983 Larry Savage filed a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial, which alleged that the verdict of the jury was contrary to the great weight and preponderance of the evidence and was not supported thereby. Other grounds set forth in the motion stated that the amount of the judgment was excessive and was contrary to the law and evidence.
Without setting a date for a hearing, the court, without stating the grounds, granted the motion and restored the case to the docket for a new trial.
On December 6, 1983 Mr. Miller filed notice of appeal from the order granting new trial.
The issue here is the validity of the order granting the new trial. It is settled in Alabama that when a trial court grants a motion for new trial without specifying grounds therefor, and one of the grounds in the motion is that the verdict is contrary to the evidence, the appellate court will presume that the trial court granted a new trial because it concluded that the verdict was contrary to the great preponderance of evidence or was unjust in light of the evidence. Loyd v. Central Bank, 405 So.2d 147 (Ala.Civ.App.1981). Moreover, the verdict of the jury is presumed to be correct and should not be set aside unless it is against the preponderance of evidence or is clearly wrong and unjust. Palmer v. Palmer, 390 So.2d 1050 (Ala.1980).
Since no grounds were stated in the court's order for new trial, this court is required to review only the question of whether the jury’s verdict was supported by a preponderance of the evidence. Loyd, supra. Clearly, the representations which were made by Larry Savage to Mr. Miller constituted fraud because Miller was assured that a check had been mailed to the Insurance Market and that insurance was in fact in existence. Moreover, Mr. Miller was damaged by this misrepresentation in that he failed to obtain insurance on his truck elsewhere.
Since we find that the jury’s verdict regarding liability was supported by the evidence, we must now consider whether the amount of the judgment was proper.
The trial judge instructed the jury that if they were reasonably satisfied that the plaintiff had suffered from a misrepresentation on the part of the defendant “then the measure of damages is such sum as would place the injured party in the same position he would have occupied had the misrepresentation been true.”
We consider such an instruction to mean that plaintiff should recover those damages that would have been recoverable had he been covered by insurance. Whether such an insurance policy would have included a requirement for the payment of a rental vehicle is, of course, purely speculative. However, in view of the evidence, the jury could have inferred that the cost of a rental vehicle was a necessary part of the damage suffered by Miller. The jury has the duty to apply the law as given to it by the trial court to the facts in the case. Raines v. Williams, 397 So.2d 86 (Ala.1981).
Evidence was admitted without objection that the reasonable cost of a rental truck was $24 per day since the wreck. This would amount to a little over $7,300. When this amount is added to the amount of Mr. Miller’s equity of $4,044.97, plus $212.36, which is interest at the rate of six percent from the date of the accident, we come up with a total amount of $11,556.97. This amount of proven damages is in excess of the jury verdict of $7,587.66.
A new trial should be granted only when the jury verdict is against the great preponderance of the evidence. Matthews Brothers Construction Co. v. Lopez, 434 So.2d *877 1369 (Ala.1983). In the case sub judice the jury’s verdict is clearly within the limits of the evidence relating to the amount of damages suffered by Miller. Accordingly, the verdict is not against the great preponderance of the evidence and the trial court erred in setting it aside.
The judgment of the trial court is reversed and the cause remanded for the reinstatement of the verdict and judgment of $7,587.66 previously rendered.
REVERSED AND REMANDED WITH INSTRUCTIONS.
WRIGHT, P.J., and HOLMES, J., concur.