CRAWLEY, Judge.
Frederick E. Young (the “worker”) sued Norfolk Southern Railway Company (the “company”) and two of its claims agents, C.E. McDonald and G.H. Register, Jr. (the “company’s claims agents”), alleging negligence and negligent assignment of duties, both pursuant to the Federal Employer’s Liability Act (FELA), conversion of certain settlement proceeds, and fraudulent misrepresentation. The trial court entered a summary judgment for the company on all the claims except for the FELA negligence claim and made the order final pursuant to Rule 54(b), Ala.R.Civ.P. The worker appealed to the supreme ■ court, which transferred the case to this court pursuant to Ala.Code 1975, § 12-2-7(6).
A motion for summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. See West v. Founders Life Assurance Co. of Florida, 547 So.2d 870 (Ala.1989), and Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989), for a discussion of the application of the substantial evidence rule.
The worker was first injured in an accident while driving a company truck on August 4, 1992, when a vehicle driven by a person insured by State Farm Mutual Insurance Company (“State Farm”) crossed the center line of a two-lane road and struck the company truck. He sustained injuries to his neck and shoulder, particularly on the left side. He was treated for his injuries at a local hospital and was released the same day. He missed one regularly scheduled work day before returning to work. Because his pain persisted, he sought treatment from Dr. Timothy Cool, who prescribed two weeks of physical therapy. In September 1992, when the pain in his neck and shoulder had subsided, the worker was released to return to work.
In December 1992, the worker was injured in another accident, again while he was a passenger in a company truck. As a result of that second accident, the worker had pain in his neck and right shoulder, as well as his left shoulder. He had not previously had right-shoulder pain. The worker was again treated at a local emergency room; he was released the same day and returned to work the next day. ■
The employee had a third on-the-job accident in January 1993. The worker began to have pain in the neck and left shoulder area while cranking a railroad switch for the company. The pain he experienced at that time was in the same area as the injury from the first accident. The day after that accident, the worker returned to see Dr. Cool. Dr. Cool treated him conservatively, with medication and therapy, but the pain persisted. A follow-up M.R.I. revealed some abnormality in the rotator cuff tendon, and arthroscopic surgery was performed in March 1993.
During the course of his treatment by Dr. Cool, the worker signed a disability insurance form stating the date of the first accident (August 4,1992) as the “date this condition first appeared.” Further, Dr. Cool’s records refer to the same date, and his notes reflect that the worker’s injuries were present “eight months post motor vehicle accident,” which would correspond to the date of the first accident. Dr. Cool testified that the rotator cuff tear was consistent with the history the worker gave of the first automobile accident. The worker lost approximately six months from work while recuperating from the March 1993 surgery, returning to work without restrictions in September 1993.
Shortly after the first accident, the company’s claims agents notified State Farm that the company would be seeking reimbursement from State Farm for medical expenses and salary advances paid to the worker, as well as property damage reimbursement. They further informed State Farm that any negotiation for settlement as to personal injuries should be handled directly with the worker after he had fully recovered.
The company paid all the worker’s medical expenses relating to the first accident. The worker also received railroad retirement benefits and salary advances from March 1993 (the time of surgery) until September 1993, when he returned to work. During apparent settlement negotiations with State Farm, the worker was informed by State Farm that its *446 policy limit for the first accident was $100,-000. He was also informed by State Farm that the company would have to be reimbursed from the proceeds of any payment by State Farm.
Further, the worker signed a release authorizing the company to provide State Farm with copies of all the medical bills it had paid on his behalf. The company provided State Farm with ‘the exact amounts of medical expenses, retirement benefits paid, and salary advances made to the worker, and it instructed State Farm that after the company was reimbursed, the company was to be included in any release between State Farm and the worker. The moneys were withheld from the worker’s settlement with State Farm, although no one from State Farm was present at the actual disbursement. Later, the worker contacted the claims office of the company in an effort to seek medical attention for problems he was having with his left shoulder, and at that point, he says he discovered that his claim file for the second on-the-job accident had been closed.

Negligent Assignment of Duties

The worker’s FELA claim, alleging negligent assignment of duties, is based on his third on-the-job injury in January 1993. The worker’s argument, in essence, is that he was already injured and that, despite knowledge of his injury, the company negligently assigned him duties that aggravated his preexisting injury. To prove negligent assignment, the worker would have to establish that the company knew of the physical limitations imposed on him by his first and second injuries and assigned him to unsuitable work despite those limitations. Chatham v. CSX Transportation, Inc., 613 So.2d 341 (Ala.1993). The record indicated that the company, at the time of the third accident, had no reason to know that the worker was not able to complete the task assigned to him, inspecting and cranking a switch. Both Dr. Cool and the worker testified that when the worker returned to work in September 1992 his symptoms from the first accident had completely subsided and he was released to return to work without restriction. According to the worker’s testimony, the second accident caused him to experience pain in his right shoulder and neck, an area that he had not previously complained of and that had not been the subject of medical treatment. Further, the worker did not miss any regularly scheduled work days as a result of the second accident. The record contains nothing that would constitute substantial evidence supporting the allegation that at the time of the third accident the company knew or should have known that the worker was unable to perform the task assigned to him.

Conversion

The worker claims that the company and its claims agents converted more than $30,000 out of the settlement he received from State Farm for the first accident. This claim is also not supported by substantial evidence. The elements of conversion include a wrongful taking of specific property and an assumption of ownership or dominion over the separate and identifiable property of another, Green Tree Acceptance, Inc. v. Tunstall, 645 So.2d 1384 (Ala.1994). Further, the plaintiff must have a right to immediate possession of such property and the taking must be in defiance of that right. Id. In the instant case, the worker was fully aware of the deductions that were being made from the gross proceeds of the State Farm settlement, and he had consented to those deductions. The worker admits that his claims of conversion against the claims agents do not include any claim that either man converted for any personal use funds belonging to the worker, but rather that the company did not have the right to be reimbursed for expenses related to the first accident. However, the record reveals that the worker not only was fully aware of the deductions but agreed with the final disbursement figures stated in the settlement documents. Again, the record shows no substantial evidence supporting the worker’s allegations of conversion of funds.

Fraudulent Misrepresentation

The worker’s final contention is that the claims agents fraudulently represented the terms of the settlement relating to the first accident. This claim is based on the worker’s having granted permission to *447 the company’s claims agents in November 1992 to act on his behalf in negotiating a settlement with State Farm regarding the first accident. In order to prove fraudulent misrepresentation, a plaintiff must show (1) that the defendant made a false representation to the plaintiff; (2) that the representation concerned a material matter; (3) that the plaintiff relied on that representation; and (4) that the reliance proximately caused the plaintiff to incur damage. Reeves Cedarhurst Development Corp. v. First American Federal Savings & Loan Ass’n, 607 So.2d 180 (Ala.1992).
The worker testified that the claims agents never told him anything that was not true; that he was satisfied with their dealings with him; and that his claim against both claims agents was based on their involvement in the settlement of the claims against State Farm. However, the worker further testified that he negotiated the settlement on his own behalf and that he never discussed settlement with State Farm with the company’s claims agents or any other representative of the company before the final settlement was made. The worker, therefore, fails to present substantial evidence of fraudulent misrepresentation.
The judgment of the trial court is affirmed.
AFFIRMED.
YATES, MONROE, and THOMPSON, JJ., concur.
ROBERTSON, P.J., concurs in the result.