WOODALL, Justice.
In case no. 1091798, John Coleman McGee (“Jack”) appeals from a summary *662 judgment and a judgment as a matter of law in favor of his brother, Willis Banks McGee (“Willis”), individually and as executor of the estate of Elizabeth Banks McGee, their mother (“Mrs. McGee”), in an action commenced by Jack to contest Mrs. McGee’s will. In case no. 1100247, Willis appeals the trial court’s denial of his request, pursuant to Ala. Code 1975, § 43-8-196, for the payment of litigation costs and attorney fees in the will contest. We have consolidated the appeals for the purpose of writing one opinion. In case no. 1091798, we affirm in part, reverse in part, and remand. In case no. 1100247, we reverse and remand.

I. Factual and Procedural Background

On June 7,1992, Mrs. McGee executed a will, which was drafted by Crawford Williams, her attorney of approximately 30 years. The document provided, in substantive and relevant part:
“I, ELIZABETH BANKS McGEE, ... being of sound mind and disposing memory, do hereby make and publish this, my Last Will and Testament, hereby revoking any and all former Wills made by me.
[[Image here]]
“ITEM TWO
“I give, will, devise and bequeath unto my beloved son, [Willis], my home, together with the real estate upon which it is situated and all household furniture, furnishings and appliances ... to be his absolutely.
“ITEM THREE
“I give, will, devise and bequeath the sum of $25,000.00 cash to each grandchild of mine who survives me (and who might be born within nine (9) months of my death) to be received by and to be held by their parent(s) for such grandchild’s needs as said parent(s), in their own discretion, might determine appropriate .... In the event that my son, [Jack], is divorced from my daughter-in-law, CAROL S. McGEE, then I designate my daughter-in-law, CAROL S. McGEE, as the ‘parent’ to receive and hold such sum as bequeathed to my grandchild, KRISTIN McGEE, for all purposes under this Item of my Will.
“ITEM FOUR
“I give, will, devise and bequeath unto my beloved son, [Jack], the sum of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) cash to be his absolutely, if he survives me.
“ITEM FIVE
“I give, will, devise and bequeath all the rest, residue and remainder of my property, real, personal and/or mixed, wherever situated, which I may own or to which I may be entitled at the time of my death, or to which my estate may become entitled after my death, or over which I may have any power of disposition, unto my beloved son, [Willis], to be his absolutely.
[[Image here]]
“ITEM SEVEN
“I hereby constitute and appoint as Executor of this, my Last Will and Testament, my son, [Willis].... ”
(Capitalization in original.)
Mrs. McGee executed the will in her home. Present at the signing of the will were Williams and Jim Wagstaff, both of whom signed the document as witnesses. Willis had played no role in the discussions between Williams and Mrs. McGee during the drafting stage of the will, and he was not present when the will was signed. However, sometime before Mrs. McGee’s death, Willis allegedly placed the will in Mrs. McGee’s bank safe-deposit box.
Mrs. McGee died on January 18, 2005, and Willis subsequently offered the will for probate. Letters testamentary were is *663 sued to Willis in February 2005. On June 15, 2005, Jack filed a “complaint for contest of will.” As last amended, the complaint alleged (1) that the will was “invalid because it was not executed as required by law”; (2) that Mrs. McGee “lacked sufficient testamentary capacity”; (S) that the will was the product of undue influence; and (4) that the submission of the will for probate perpetrated a fraud on the court. In the complaint Jack also sought the imposition of a constructive trust over the property of the estate.
Additionally, the complaint contained a conversion claim, set forth, in pertinent part, as follows:
“17. Willis McGee has also wrongfully taken and/or withheld a number of items from Mrs. McGee’s residence which belong to Jack McGee.
“18. The items belonging to Jack McGee, but currently retained, controlled, destroyed, sold or otherwise disposed of by Willis McGee include, but [are] not limited to, the following:
“a. a 16 gauge shotgun;
“b. an automatic 22 caliber pistol; “e. An over/under shotgun;
“d. a 22 caliber rifle;
“e. a 20 gauge shotgun;
“f. a 410 gauge shotgun;
“g. two 3-barrel guns;
“h. his grandfathers’ guns;
“i. a marble top;
“j. two antique bedroom suites;
“k. two wing back antique chairs;
“1. a rocking chair; and
“m. miscellaneous family items.
“19. Despite his ownership of these items and Jack’s request for their return, Willis McGee has refused and/or failed to return said items to Jack McGee.”
The trial court entered a summary judgment in favor of Willis on all counts of the complaint except the undue-influence count, which was tried to a jury. However, at the close of Jack’s case, the trial court entered a judgment as a matter of law (“JML”) in favor of Willis on that count, “with leave for [Willis] to prove reasonable costs and fees pursuant to § 43-8-196, Code of Alabama (1975).” Jack’s motion to alter, amend, or vacate that judgment was denied by operation of law, and he appealed (case no. 1091798). Meanwhile, Willis filed a “submission to prove costs and fees.” The trial court, however, denied Willis’s request for payment of costs and fees, and Willis also appealed (case no. 1100247).
On appeal, Jack contends that the trial court erred in entering both the summary judgment and the JML, while Willis contends that the trial court erred in denying his request for the payment of costs and fees. Because the merits of Willis’s appeal turn, in large part, on the merits of Jack’s appeal, we first address the issues presented in case no. 1091798.
II. Discussion — Case No. 1091798
On appeal, Jack challenges the summary disposition by JML of his undue-influence claim. He also challenges the summary judgment on his fraud and conversion claims. He does not challenge the summary disposition of the following two claims eliminated by summary judgment: (1) the alleged invalid execution of the will and (2) Mrs. McGee’s alleged lack of testamentary capacity. In any event, “[t]he de novo ‘standard by which we review a ruling on a motion for a JML is “ ‘materially indistinguishable from the standard by which we review a summary judgment.””” Glass v. Birmingham Southern R.R., 982 So.2d 504, 506 (Ala.2007) (quoting Bailey v. Faulkner, 940 So.2d 247, 249 (Ala.2006), quoting in turn Flint *664 Constr. Co. v. Hall, 904 So.2d 236, 246 (Ala.2004)). “We must decide whether there was substantial evidence, when viewed in the light most favorable to the plaintiff, to warrant a jury determination.” Alabama Power Co. v. Aldridge, 854 So.2d 554, 560 (Ala.2002). We first address Jack’s contention that the trial court erred in entering the JML on his undue-influence claim.
A. JML — Undue Influence
Jack concedes, as he must, that in order “[t]o submit his claim to a jury” he had the burden of producing substantial evidence of each element of undue influence. Jack’s brief, at 24-25. Those elements are:
“ ‘(1) that a confidential relationship existed between a favored beneficiary and the testator; (2) that the influence of or for the beneficiary was dominant and controlling in that relationship; and (3) that there was undue activity on the part of the dominant party in procuring the execution of the will.’ ”
Furrow v. Helton, 13 So.3d 350, 353-54 (Ala.2008) (emphasis added) (quoting Clifton v. Clifton, 529 So.2d 980, 983 (Ala. 1988)). This Court has often defined a “favored beneficiary” as
“ ‘[o]ne who, in the circumstances of the particular case, has been favored over others having equal claim to the testator’s bounty. An unnatural discrimination, leading to a natural inference that advantage has been taken by one in position so to do; and shown to have been busy in getting such will executed.’ ”
Pirtle v. Tucker, 960 So.2d 620, 629 (Ala. 2006) (quoting Cook v. Morton, 241 Ala. 188, 192, 1 So.2d 890, 892 (1941)).
Assuming, arguendo, that the proponent of a will is a favored beneficiary, it still must be shown that there was “active interference in procuring the execution of the will.” Clifton v. Clifton, 529 So.2d at 984. “This activity must be in procuring the execution of the will and more than activity and interest referable to a compliance with or obedience to the voluntary and untrammeled directions of the tes-tat[rix].” Johnson v. Howard, 279 Ala. 16, 21, 181 So.2d 85, 90 (1965) (emphasis added).
“ ‘Undue activity in the procurement or execution of a will may ... be proved by circumstantial evidence.’ ” Pirtle, 960 So.2d at 631 (quoting Allen v. Sconyers, 669 So.2d 113, 117 (Ala.1995)). However, “[a] court does ‘not look at individual facts or evidence in isolation in determining whether the evidence supports [this] element of undue influence.’” 960 So.2d at 632. “Evidence proving that there was undue activity [on the part of the named beneficiary] in procuring the execution of the will is crucial to the determination of the existence of undue influence.” Wall v. Hodges, 465 So.2d 359, 363 (Ala.1984) (emphasis added).
Circumstances evidencing undue activity in the procurement or execution of a will are those where a beneficiary
“ ‘ “was active in and about the execution and preparation of said will such as the initiation of the proceedings for the preparation of the will, or participation in such preparation, employing the draftsman, selecting the witnesses, excluding persons from the testatrix at or about the time of the execution of the will, concealing the making of the will after it was made, and the like
Reed v. Shipp, 293 Ala. 632, 636, 308 So.2d 705, 708 (1975) (quoting appellants’ brief, quoting in turn Lewis v. Martin, 210 Ala. 401, 413, 98 So. 635, 647 (1923)). There was insufficient relevant evidence of such activity in this case.
*665 The only evidence produced was that Mrs. McGee contacted Williams, her long-time attorney and friend, in 1992 to request a change in an existing will. The one substantive change she requested increased the amount Jack was to receive from $25,000 to $100,000. Williams made the changes Mrs. McGee requested on a draft copy of the former will and sent it to her for her approval. That marked up draft is in the record.
It is undisputed that Willis did not precipitate, participate in, or attend any of the conversations between Mrs. McGee and Williams. Neither was Willis present during the actual execution of the will, as we have already stated. He had nothing to do with selecting the witnesses to the will. Indeed, there was no evidence indicating that Willis had any foreknowledge of the will-making process. Moreover, there was no evidence indicating that Willis subsequently concealed the will or the fact of its making. Thus, we need not consider whether there was evidence of the first two elements of the undue-influence claim, because Jack has failed to present any evidence on the “crucial” third element. See Wall v. Hodges, 465 So.2d at 368 (even assuming sufficient evidence of the first two elements, undue-influence claim should not have gone to the jury in the absence of evidence that the named beneficiary “had anything to do with the procurement of the ... will or the [subsequent] re-execution of it”).
Jack points out that the will was found in an unsealed envelope in Mrs. McGee’s safe-deposit box, to which Willis had access. These facts do not aid Jack. Evidence indicating that the testatrix had a post-execution discussion with a- named beneficiary and gave him the will with instructions to “put it away for safekeeping” does not constitute evidence of undue activity in the execution of the will. Smith v. Smith, 482 So.2d 1161, 1164 (Ala.1985) (reversing a judgment entered on a jury verdict for the contestant and holding that there was not “sufficient evidence of undue influence to allow the court to ... submit the case to the jury”). Because Willis’s only involvement was in the post-execution process of allegedly placing the will in Mrs. McGee’s safe-deposit box, the trial court did not err in entering a JML in favor of Willis and that JML is affirmed.

B. Summary Judgment

Jack next challenges the summary judgment on his fraud and conversion claims.

1. Fraud

In this Court, Jack explains his fraud theory as follows:
“There are ... reasons why a jury could decide Willis offered to probate a will of dubious authenticity. First, there is evidence that Mrs. McGee said she would leave her estate to Jack and Willis in equal portions. “Second, there is evidence that Mrs. McGee and those close to her stated that she changed her testamentary intentions. In 1996, Mrs. McGee told her best friend that she had just done her will. At approximately the same time, Willis admitted to his then mother-in-law that Mrs. McGee wished to treat both Jack and Willis fairly in her will, and that any contrary intention ‘was no longer the case.’ Willis also expressed immediate regret that he shared that information.
[[Image here]]
“... Indeed, the evidence presented showed that Willis knew the 1992 will was not the true last will and testament of Mrs. McGee; he admitted as much to his then-mother-in-law. Willis nevertheless offered the 1992 will to the probate court. As such, this was a fraud on the *666 probate court, which injured Jack directly.”
Jack’s brief, at 35-37 (footnote and citations to the record omitted).
As we understand this theory, it is that, after Mrs. McGee executed her 1992 will, she changed her mind about the disposition of her estate and executed yet another will, which Willis allegedly suppressed or destroyed. Jack contends that his theory presents a cognizable cause of action under Ala.Code 1975, § 43-8-5, which provides:
“Whenever fraud has been perpetrated .in connection with any proceeding or in any statement filed under this chapter or if fraud is used to avoid or circumvent the provisions or purposes of this chapter, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person (other than a bona fide purchaser) benefitting from the fraud, whether innocent or not. Any proceeding must be commenced within one year after the discovery of the fraud or from the time when the fraud should have been discovered, but no proceeding may be brought against one not a perpetrator of the fraud later than five years after the time of the commission of the fraud. This section has no bearing on remedies relating to fraud practiced on a decedent during his lifetime which affects the succession of his estate.”
Jack insists that he “presented substantial evidehce that Willis violated” this section by suppressing or destroying a will executed by Mrs. McGee after the 1992 will. Jack’s brief, at 34. We disagree.
This Court and the Court of Civil Appeals have interpreted § 43-8-5 as a tolling provision, not as Jack proposes, as an independent source of fraud law. In that connection, we recently said:
“In Christian [v. Murray, 915 So.2d 23 (Ala.2005) ], this Court indicated its agreement with a prior decision of the Court of Civil Appeals, holding:
“ ‘[Appropriate relief for one injured by the fraud contemplated by Ala. Code 1975, § 43-8-5, would include the tolling of the time within which to file a will contest when “the facts upon which a contest could be based were misrepresented and concealed by the fraudulent acts of the proponents" of the will.’
“Christian, 915 So.2d at 27 (quoting Holway v. Wanschek, 690 So.2d 429, 433 (Ala.Civ.App.1997)). In deciding whether conduct amounts to fraud sufficient to toll the six-month limitations period for filing a will contest, this Court concluded that ‘the Legislature intended that the fraud necessary to toll the time for filing a will contest must be that kind of fraud that would allow relief for “fraud on a court.’” Christian, 915 So.2d at 28.”
Johnson v. Neal, 39 So.3d 1040, 1044 (Ala. 2009) (emphasis added). There are no timeliness issues involved in this case, and, thus, there is no need for the application of a tolling provision.
Substantively, the alleged statements of Mrs. McGee — echoed by Willis and others — regarding Mrs. McGee’s dis-positional intentions do not constitute evidence of a missing will. In essence, this argument is advanced to show a revocation of the 1992 will by a subsequent will. However, “‘[i]t is noted in McBeth v. McBeth, [11 Ala. 596 (1847),] supra [Weeks v. McBeth, 14 Ala. 474 (1848) ], that testators frequently make declarations touching their testamentary acts “for the purpose of misleading, and of stifling the importunity of relatives and friends.” ... ’ ” Allan v. Allan, 353 So.2d 1157, 1158 (Ala.1977) (quoting Allen v. Scruggs, 190 Ala. 654, 673-74, 67 So. 301, 308 (1914)). In Allan, Lawrence Allan offered his wife’s will to *667 probate. Probate was contested by a son of the marriage on the ground that the will “had been revoked by a subsequent will.” 353 So.2d at 1157. The contestant presented evidence indicating that
“his mother had told him several years before her death that she had executed a new will in which she left everything to him instead of to his father.... A neighbor of the Allans also testified that, some years before her death, Mrs. Allan told her that she had made a new will in which she left everything to her son instead of to her husband.”
353 So.2d at 1157-58. The trial court directed a verdict against the contestant and this Court affirmed, holding: “There is no evidence in this case that the proponent of the ... will destroyed a subsequent will made by the testatrix.” Id. at 1159.
Allan is instructive. Indeed, unlike this case, Allan involved evidence indicating that witnesses had actually seen the allegedly missing will. For example, the contestant in Allan “testified that he saw an instrument with his mother’s name on it and the names of two other people,” and a neighbor testified likewise. 353 So.2d at 1157-58. However, “[t]here [was] no evidence whatever that the instrument which the witnesses said they saw had been executed in the presence of two witnesses, nor that such witnesses had executed the same in the presence of the testatrix.” Id. at 1158. Thus, the contest did not warrant a jury’s consideration. A fortiori, the evidence is insufficient in this case, where no one claims to have ever seen a post-1992 document purporting to be Mrs. McGee’s will.[1] For these reasons, Jack’s fraud claim is without merit, and, as to that claim, the trial court’s summary judgment is affirmed.

2. Conversion

Finally, Jack insists that he presented evidence of conversion sufficient to withstand Willis’s summary-judgment motion. “The elements of conversion include a wrongful taking of specific property and an assumption of ownership or dominion over the separate and identifiable property of another.... Further, the plaintiff must have a right to immediate possession of such property and the taking must be in defiance of that right.” Young v. Norfolk Southern Ry., 705 So.2d 444, 446 (Ala.Civ.App.1997). In other words, “to recover under the count of conversion, plaintiff must show legal title in himself to the property at the time of the conversion and his immediate right of possession.” State Farm Mut. Auto. Ins. Co. v. Wagnon, 53 Ala.App. 712, 717, 304 So.2d 216, 219 (1974) (emphasis added).
In his summary-judgment motion addressed to the conversion claim, Willis stated, in pertinent part:
“In his Amended Complaint, [Jack] alleges that numerous items of personal property located in Ms. McGee’s house at the time of her death had been given to him by Ms. McGee prior to her death....
[[Image here]]
“[Jack’s] claims of conversion and det-inue are without merit as a matter of law, because the subject matter of those claims remained in Ms. McGee’s possession at the time of her death. Therefore, no delivery occurred as required to establish a valid gift, and the property at issue is the property of Ms. McGee’s Estate.”
*668 (Emphasis added.) Willis then cited authority for the proposition that when allegedly gifted property is found in the possession of the testator at the time of the testator’s death, it is regarded as “part of the decedent’s estate as a matter of law.”
Jack responded to the motion with his own affidavit, in which he stated, in pertinent part:
“In addition, there were several items in her house that she had given me that I was keeping there until the remodeling on my house was done, including two chairs, a table and marble top and several pictures. There were also guns of mine that I had received from my grandfather in the house when she died.
“11. At the time that mother died, I had several items of personal property that belonged to me that were located in mother’s house. Some of these items were given to me by mother, some were given to me by others, and some were items that I had purchased myself. I took actual possession of all of these items before leaving them in mother’s house including the things that mother gave me and the guns I received from my grandfather. After I took actual possession of these things, I asked mother if I could store them in her house while I was remodeling our house, which she said I could.
“12. After mother died, I tried to go into mother’s house to see what was there and retrieve certain property that was mine. However, when I tried to get in her house, I could not because Willis had changed all the locks. I asked Willis if I could have a key to the house so that I could go into our mother’s house and see what was there and retrieve what was mine. Willis told me that he would not allow me to go into the house nor would he return any of my possessions.”
(Emphasis added.)
According to Jack, he “offered evidence that there were three classes of items that Willis converted,” namely, (1) “his own property that he was storing at Mrs. McGee’s residence at the time of her death”; (2) property “that Jack had been given by persons other than Mrs. McGee and (3) “items he was given by Mrs. McGee.” Jack’s brief, at 82-33 (emphasis added). He points out — correctly, we note — that Willis’s summary-judgment motion challenged the conversion claim only as to the third class of property.
“ ‘The [summary-judgment] movant has the initial burden of making a prima facie showing that there is no genuine issue of material fact; if the movant makes that showing, the burden then shifts to the nonmovant to present substantial evidence of each element of the claim challenged by the movant.’ Harper v. Winston County, 892 So.2d 346, 349 (Ala.2004) (emphasis added). However, if the movant does not satisfy his initial burden, ‘then he is not entitled to judgment. No defense to an insufficient showing is required.’ Ray v. Midfield Park, Inc., 293 Ala. 609, 612, 308 So.2d 686, 688 (1975) (emphasis added).”
White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1054-55 (Ala.2008). Jack argues that the trial court “inexplicably granted summary judgment regarding” the two classes of items not challenged in the summary-judgment motion and that it erred in so doing. We agree.
Because Willis challenged the sufficiency of Jack’s conversion claim only as to one of three classes of property, namely, “items he was given by Mrs. McGee,” the burden never shifted to Jack to defend the challenge as to the other two classes of allegedly converted property. *669 The trial court erred, therefore, in summarily disposing of Jack’s conversion claim in toto. Thus, we discuss only the sufficiency of the evidence relating to the items Jack allegedly received as inter vivos gifts from Mrs. McGee.
In that connection, Willis challenges the sufficiency of Jack’s affidavit. According to Willis, Jack’s affidavit fails to show that he had legal title to the allegedly gifted property that remained in Mrs. McGee’s possession at the time of her death. This is true, because, he says, the statements in Jack’s affidavit are merely conclusory, that is, the affidavit does not contain facts necessary “to establish when any such gift occurred, the circumstances surrounding any such gift, nor facts sufficient to establish that delivery had occurred in order to constitute a valid inter vivos gift.” Willis’s principal reply brief, at 47 (citing Dial v. Dial, 603 So.2d 1020, 1022-23 (Ala.1992) (delivery is an essential element of a valid inter vivos gift, and “the death of the donor [without a delivery] is an automatic revocation”)).
We agree. To be sure, Jack’s affidavit states: “I took actual possession of all of these items before leaving them in mother’s house including the things that mother gave me-” (Emphasis added.) However, “when a response to a motion for summary judgment or an accompanying affidavit states conclusions on ultimate issues without including facts that tend to prove or disprove the allegations made in the motion for summary judgment, it is insufficient to give rise to genuine issues of fact.” Olson v. State Farm Mut. Auto. Ins. Co., 174 P.3d 849, 858 (Colo.Ct.App. 2007). See Brown ex rel. Brown v. St. Vincent’s Hosp., 899 So.2d 227, 238-39 (Ala.2004).
Thus, where the issue was whether a property owner “offered substantial evidence that he suffered harm or loss as a result of the construction [by a municipality] of [a] pedestrian bridge” across a highway adjacent to his property, when the evidence offered in response to the properly supported summary-judgment motion was the owner’s statement in his affidavit that the bridge “interfere^] with the ingress [to] and egress [from]” his property, this Court held that such evidence was merely conclusory. Reid v. Jefferson Cnty., 672 So.2d 1285, 1286 (Ala.1995). Also, where the issue was whether a common-law marriage had been established, affiant’s statements referring to the other party as “his wife” were merely conclusory and did not constitute substantial evidence of the existence of a marriage. Salter v. State, 971 So.2d 31, 35 (Ala.Civ.App.2007). Here the bare statement — “I took actual possession” — is a legal conclusion as to an element of a gift, not factual support for the element of delivery. Consequently, Jack’s affidavit does not provide substantial evidence that he ever acquired title and a right to possession of the property allegedly given him by Mrs. McGee. The trial court did not err in entering a summary judgment as to that class of items allegedly converted and, insofar as the summary judgment did so, it is affirmed. Insofar as it entered a summary judgment regarding the other two classes of property, that summary judgment is reversed.
III. Discussion — Case No. 1100217
In Willis’s appeal, he contends that the trial court erred in denying his motion for costs and fees, pursuant to § 43-8-196, which provides:
“The costs of any contest under the provisions of this article must be paid by the party contesting if he fails; otherwise, it must be paid by the plaintiff or out of the estate, or in such proportion by the plaintiff or out of the estate as the court may direct; and for the costs directed to be paid by the plaintiff or *670 defendant, execution may be issued as in other cases; and the costs directed to be paid out of the estate may be collected as other claims against an estate are collected.”
(Emphasis added.)
Although this section speaks specifically of “costs,” it authorizes an award of attorney fees as part of the costs in a will contest. Hart v. Jackson, 607 So.2d 161, 164 (Ala.1992). The contestant is liable “if he fails,” which this Court has construed to mean that “if there is some credible evidence offered by the contestant in support of the theory of the contest, the contestant is not to be charged with paying the attorneys’ fees of the proponent.” Bleidt v. Kantor, 412 So.2d 769, 771 (Ala. 1982) (emphasis added) (construing the predecessor statute to § 43-8-196). Bleidt involved a will contest commenced by Nell Bleidt on the grounds of undue influence and forgery. 412 So.2d at 770. The case was tried to a jury, which returned a verdict against Bleidt and in favor of the proponents of the will. Id. Subsequently, the trial court awarded the proponents $10,000 in attorney fees, pursuant to § 43-1-76, which is now § 43-8-196. Bleidt’s appeal did not involve a specific challenge to the sufficiency of the evidence of the grounds for the contest but did challenge the propriety of the fee award.
This Court in Bleidt reversed the fee award on the basis of the litigation represented by Clark v. Clark, 280 Ala. 644, 197 So.2d 447 (1967) (“Clark I”) (reversing a judgment entered on a jury verdict for the contestant and rendering a judgment in favor of the proponent on the ground that the evidence wqs insufficient to support the contest); and Clark v. Clark, 287 Ala. 42, 247 So.2d 361 (1971) (“Clark II”) (holding that attorneys who represented the “executor in the will contest” in Clark I were entitled to a fee to be paid by the contestant).
Discussing Clark I and Clark II, the Court in Bleidt explained:
“[Clark II] involved an allowance of attorneys’ fees under Title 61, § 59, Alabama Code of 1940, the predecessor of Code of 1975, § 43-1-76 [now § 43-8-196]. There this Court was dealing with a prior will contest which had been successful but which, upon review, was found to be based upon insufficient evidence. [Clark I ]. In [Clark II ] dealing with the award of attorneys’ fees against the contestant as costs, this Court referred to [Clark I ] as ‘altogether without merit,’ or frivolous. Therefore, this Court held the trial court had erred in decreeing that the executor’s attorneys be paid from the residuary estate ‘and in not taxing such fee against the contestants as costs in the will contest suit.’ [Clark II], supra, 287 Ala. 42, 48, 247 So.2d 361. In other words, this Court construed § 59 (now [§ 43-8-196]) as authorizing attorneys’ fees against the contestant who fails only when the contest is without merit. That is, if there is some credible evidence offered by the contestant in support of the theory of the contest, the contestant is not to be charged with paying the attorneys’ fees of the proponent.
“An examination of this record convinces us that this contest was not ‘altogether without merit.’ To the contrary, the contestant adduced credible evidence of undue influence and forgery. The proponents of the will produced evidence tending to show an absence of undue influence or forgery. The trial court properly allowed the jury to resolve the conflict created by the evidence of both sides, and the jury found for the proponents. But the mere fact that the contestant lost could not under § 43-1-76 *671 [now § 43-8-196] and Clark [77], 287 Ala. 42, 247 So.2d 361 (1971), be used to charge the contestant with the proponents’ attorneys’ fees as part of the costs.”
412 So.2d at 771-72 (emphasis added).
In this case, we are presented with no credible evidence in support of any ground upon which Jack challenged Mrs. McGee’s will.[2] The trial court erred, therefore, in refusing to award Willis fees and costs.
717 Conclusion
In summary, the judgment in case no. 1091798 is reversed and the case remanded for further proceedings as to the issue of conversion of the items Jack allegedly received from sources other than Mrs. McGee. In all other respects, the judgment in case no. 1091798 is affirmed. Of course, our disposition of the fraud and undue-influence claims similarly disposes of any need for a constructive trust. As for case no. 1100247, however, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.
1091798 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MALONE, C.J., and STUART, BOLIN, PARKER, SHAW, MAIN, and WISE, JJ., concur.
MURDOCK, J., concurs in the result.
1100247 — REVERSED AND REMANDED.
MALONE, C.J., and STUART, PARKER, SHAW, and MAIN, JJ., concur.
BOLIN, MURDOCK, and WISE, JJ., concur in the result.

. A directed verdict has been renamed as a judgment as a matter of law. See Rule 50, Ala. R. Civ. P.

. Alternatively, Willis asks this Court to overrule Bleidt. Because of our resolution of the issue in favor of Willis, we decline to address that request.