Rel: June 26, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

_____

### SC-2024-0444
_____

### William C. Harper

### v.

### Alice Lynn Harper Taylor

### Appeal from Monroe Circuit Court
### (CV-18-1)

PER CURIAM.

The Monroe Circuit Court ordered William C. Harper to pay almost $6.3 million in attorneys' fees and costs to his sister, Alice Lynn Harper Taylor, following lengthy litigation over their deceased mother's estate. We reverse the circuit court's judgment.

I.

Harper and Taylor's mother, Alice Earl Harper, died on March 1, 2013, leaving behind a net worth exceeding $13 million. (C. 5659) She also left behind multiple purported wills. Relevant here are two such wills, one from 1995 and another from 2007. These competing wills have yielded lengthy litigation and multiple trips to this Court. See, e.g., Harper v. Taylor, 343 So. 3d 1 (Ala. 2021) (plurality opinion) ("Harper III"); Ex parte Taylor, 252 So. 3d 637 (Ala. 2017); Taylor v. Estate of Taylor, 164 So. 3d 542 (Ala. 2014).

At bottom, Harper maintains that the 1995 will (which favors Taylor) is invalid, while Taylor insists that the 2007 will (which favors Harper) is invalid. The siblings dispute whether their mother lacked capacity to execute the 2007 will favoring Harper. They also dispute whether the 2007 will favoring Harper was the product of Harper's

"undue influence" over his mother in the waning years of her life as she battled Alzheimer's disease.

In Harper III, the case's most recent trip here, this Court directed the circuit court to vacate a judgment for Taylor premised on a jury verdict enforcing the 1995 will in her favor. Harper III, 343 So. 3d at 5. The Court relied on a state statute governing the transfer of will contests from a probate court to a circuit court: Upon demand of any party to a will contest, the probate court "must enter an order transferring the contest to the circuit court" and also "certify all papers and documents pertaining to the contest to the clerk of the circuit court." Ala. Code 1975, § 43-8-198. Here, the Monroe Probate Court had entered the transfer order, just as required by this transfer statute. It had even transferred the pertinent documents as required by the transfer statute. But it had not actually certified those documents to the circuit-court clerk. That lack of "strict compliance" with the transfer statute, the Court held, was fatal to the circuit court's jurisdiction. See Harper III, 343 So. 3d at 5.

Following this Court's decision in Harper III, the Monroe Circuit Court once again considered the siblings' dispute and once again entered a judgment for Taylor. The circuit court first vacated its previous

3

judgment in favor of Taylor as required by this Court's mandate. The Monroe Probate Court then certified its records to the circuit court as required by the transfer statute. In early March 2024, following a second jury trial, the circuit court once again entered a judgment on a jury verdict in favor of Taylor.

With this second judgment in hand, Taylor sought the relief at issue in the current appeal, an award of attorneys' fees and costs against Harper. For legal authority, Taylor invoked a provision of the Probate Code under which "costs" of a will contest must be paid by the "contesting party if he or she fails." Ala. Code 1975, § 43-8-196. She also submitted testimony, both documentary and in-person, from three attorneys (her two lawyers and one outside lawyer), supporting her fee claim under the so-called "Peebles" factors -- i.e., factors this Court recognized in Peebles v. Miley, 439 So. 2d 137 (Ala. 1983), as governing the determination of reasonable attorneys' fees. Harper opposed Taylor's request by contending that the estate should be liable for any award of costs and attorneys' fees. But he did not otherwise challenge Taylor's request.

Following a hearing, the circuit court ordered Harper to pay Taylor almost $6.3 million in attorneys' fees and costs. Because Harper's

4

challenge to the 1995 will "was not supported by credible evidence," it concluded that costs and fees should be taxed against him pursuant to the will-contest costs statute, § 43-8-196. Citing the Peebles factors, the circuit court then calculated the amount of the award. Based on "a reasonable and proper attorney fee rate" of $800 an hour, the court ordered Harper to pay one of Taylor's attorneys $1,969,600 (for his 2,462 hours of "reasonable, proper, and necessary" work) and another of Taylor's attorneys $3,868,000 (for his 4,835 hours of such work). The court also ordered Harper to pay $455,534.54 in "reasonable and necessary" costs, bringing the total fee and costs award against Harper to $6,293,134.54.

Following the denial of a postjudgment motion, Harper timely filed his notice of appeal to this Court.

## II.

On appeal, Harper raises two arguments challenging the circuit court's jurisdiction to enter the attorneys' fee award against him. Both challenges raise purely legal questions, which we review de novo. See Alabama Republican Party v. McGinley, 893 So. 2d 337, 342 (Ala. 2004).

## A.

First, Harper argues that the circuit court lacked subject-matter jurisdiction because, "following this Court's … remand in the most recent <u>Harper</u> opinion, no new case was ever docketed." Harper's brief. p. 21. In other words, on Harper's reading of the transfer statute, a circuit court must docket a will contest "<u>following</u> a transfer from and certification by the probate court." <u>Id.</u> (emphasis added). Because the circuit court continued to "enter orders and judgments in the case this Court held was void [in <u>Harper III</u>]," Harper contends, the circuit court "[failed] to comply <u>exactly</u>" with the transfer statute and therefore "never obtained jurisdiction." <u>Id.</u> at 23 (emphasis added).

We disagree. For one thing, the mandate in <u>Harper III</u> required only that the circuit court vacate its February 2021 judgment. It did not hold that the underlying case was void, and it did not require that the circuit court dismiss the case. Nothing in <u>Harper III</u> spoke to the continuing validity of the case number used to "enter orders and judgments" in the Harper siblings' will contests.

More importantly, the transfer statute does not say what Harper thinks it says. That statute does indeed require a transferred will contest

to be "docketed by the clerk of the circuit court." § 43-8-198. But it does not prescribe the hard-and-fast sequencing mandate Harper proposes:

> "Upon the demand of any party to the contest, made in writing at the time of filing the initial pleading, the probate court, or the judge thereof, must enter an order transferring the contest to the circuit court of the county in which the contest is made, and must certify all papers and documents pertaining to the contest to the clerk of the circuit court, <u>and the case shall be docketed by the clerk of the circuit court</u> and a special session of said court may be called for the trial of said contest or, said contest may be tried by said circuit court at any special or regular session of said court. The issues must be made up in the circuit court as if the trial were to be had in the probate court, and the trial had in all other respects as trials in other civil cases in the circuit court."

<u>Id.</u> (emphasis added). This statutory language describes the procedural steps necessary to transfer a will contest in a particular sequence, perhaps the most natural sequence given the usual course of events. But describing the steps in sequence is not the same thing as mandating that sequence, as the text of the transfer statute itself reveals. After all, the statute requires a transfer demand to occur "<u>at the time of filing the initial pleading</u>." <u>Id.</u> (emphasis added). But no similar mandatory-timing language exists with respect to the docketing requirement at issue in this

7

case.[1] On that specific requirement, all that is required is that the will contest "be docketed by the clerk of the circuit court" at some point.

It is true that, "[o]ver the past several decades," our Court has required "strict compliance" with the transfer statute as a "necessary" prerequisite for jurisdiction to "attach" in a circuit court. Harper III, 343 So. 3d at 3; see id. (collecting cases). But the cases embodying this policy are meaningfully different from the present case. In Jones v. Brewster, 282 So. 3d 854, 860 (Ala. 2019), the circuit court lacked jurisdiction because the record was "devoid of a transfer order from the probate court." (Emphasis added.) See also Burns v. Ashley, 274 So. 3d 970, 974 (Ala. 2018) (same). In Kaller ex rel. Conway v. Rigdon, 480 So. 2d 536, 538 (Ala. 1985) (plurality opinion), the circuit court lacked jurisdiction because the transfer proponent "did not file a pleading at the same time he filed the motion to transfer." And in Harper III, of course, the circuit court lacked jurisdiction because the probate court wholly failed to certify its record to the circuit-court clerk. In each of those decisions, unlike here,

---

[1]See, e.g., Harper III, 343 So. 3d at 4 (quoting Jones v. Brewster, 282 So. 3d 840, 857-58 (Ala. 2019)) (listing "seven requirements" evident from the text of the transfer statute but not mentioning timing with respect to the docketing requirement).

8

there was a total failure of compliance with a core requirement of the transfer statute. Here, the circuit court did comply with the transfer statute, strictly speaking.

It is equally true that we have interpreted the transfer statute in light of its objective, manifest purpose -- that is, as Justice Mitchell, writing for a plurality of this Court, put it in Harper III, the "important reason[s]" underlying its requirements. 343 So. 3d at 4.[2] The docketing requirement's purpose appears to be to facilitate the transfer statute's later, substantive case-handling requirement: "The issues must be made up in the circuit court as if the trial were to be had in the probate court, and the trial had in all other respects as trials in other civil cases in the circuit court." § 43-8-198. The docketing procedure that occurred below will serve this manifest purpose just as well as if it had occurred after the probate court entered its transfer order and certified its record. When a circuit court has met both the purpose of the transfer statute and its

---

[2]See also Harper III, 343 So. 3d at 6-7 (Shaw, J., concurring in the result) (discussing the role of statutory purpose in interpreting the transfer statute); Jones v. Brewster, 282 So. 3d 854, 865-66 (Ala. 2019) (Sellers, J., dissenting) (interpreting the transfer statute based on the "policy behind [its] requirement[s]").

"terms," we cannot hold it in error. Harper III, 343 So. 3d at 7 (Shaw, J., concurring in the result) (emphasis added).

B.

Harper's fallback jurisdictional argument applies "[e]ven assuming that the trial court did obtain subject-[matter-]jurisdiction over the case as a whole following the probate court's certification of [its] records on remand" after Harper III. Harper's brief, pp. 23-24. In that scenario, he argues, the circuit court at least lacked jurisdiction to award attorneys' fees for the time Taylor's attorneys spent in circuit court before the probate court certified its record. Those precertification proceedings, he argues, were a "complete nullity" in the eyes of the law.

Harper's reliance on McNutt v. Beaty, 370 So. 2d 998, 1000 (Ala. 1979), in support of this argument is misplaced. In McNutt, this Court held that, after a case is dismissed for lack of subject-matter jurisdiction, no award of attorneys' fees may be entered. In this case, the opposite has occurred: After Harper III, the circuit court effectively gained subject-matter jurisdiction upon the probate court's certification of its record to the circuit-court clerk. As Taylor puts it, "the jurisdictional defect was cured." Taylor's brief p. 21.

10

With jurisdiction to enter the fee award, there is nothing to distinguish the circuit court's order below from countless other fee awards premised on work done before a court obtains jurisdiction. Taylor gives several examples of how her attorneys' precertification work contributed to their postcertification work. She identifies witnesses who testified in the first trial who died before the second trial. She also identifies witnesses whose depositions were taken in preparation for the first trial and then later used for the second trial. Harper may believe that Taylor's attorneys claimed excessive fees for their precertification work. But that concern goes to the reasonableness of the fee award, not the circuit court's subject-matter jurisdiction.

## III.

With the jurisdictional issues out of the way, we turn to Harper's argument that the circuit court's fee award, in his view, fails to comply with the relevant statute governing an award of "costs" in a will contest, § 43-8-196. That statute provides that the "costs" of a will contest -- which, under current Alabama caselaw, includes attorneys' fees -- "must be paid by the party contesting the will if he or she fails." Failure, in this context, does not mean merely losing the will contest. Rather, this Court

11

has construed the "if he or she fails" language of § 43-8-196 to mean that, "'if there is <u>some credible evidence</u> offered by the contestant in support of the theory of the contest, the contestant is not to be charged with paying the attorneys' fees of the proponent.'" <u>McGee v. McGee</u>, 91 So. 3d 659, 670 (Ala. 2012) (quoting <u>Bleidt v. Kantor</u>, 412 So. 2d 769, 771 (Ala. 1982)). We agree with Harper that, under this "some credible evidence" test, he cannot be compelled to pay attorneys' fees in this case.

In particular, we believe that reversal is required under this Court's decisions in <u>McGee</u>, <u>supra</u>, and <u>Bleidt</u>, <u>supra</u>. In <u>McGee</u>, Willis Banks McGee ("Willis") successfully defended a will contest filed by his brother, John Coleman McGee ("Jack"), by obtaining a summary judgment on most of Jack's claims and obtaining a judgment as a matter of law, at the close of Jack's evidence, on Jack's remaining claim. Willis asked the trial court to order Jack to pay his attorneys' fees, but the court refused, and Willis appealed to this Court. In holding that the trial court had erred by denying Willis's request for attorneys' fees, this Court discussed its prior decision in <u>Bleidt</u>:

> "<u>Bleidt</u> involved a will contest commenced by Nell Bleidt on the grounds of undue influence and forgery. 412 So. 2d at 770. The case was <u>tried to a jury</u>, which returned a verdict against Bleidt and in favor of the proponents of the will. <u>Id.</u>

Subsequently, the trial court awarded the proponents $10,000 in attorney fees, pursuant to § 43-1-76, which is now § 43-8-196. Bleidt's appeal did not involve a specific challenge to the sufficiency of the evidence of the grounds for the contest but did challenge the propriety of the fee award.

"This Court in Bleidt reversed the fee award on the basis of the litigation represented by Clark v. Clark, 280 Ala. 644, 197 So. 2d 447 (1967) ('Clark I') (reversing a judgment entered on a jury verdict for the contestant and rendering a judgment in favor of the proponent on the ground that the evidence was insufficient to support the contest); and Clark v. Clark, 287 Ala. 42, 247 So. 2d 361 (1971) ('Clark II') (holding that attorneys who represented the 'executor in the will contest' in Clark I were entitled to a fee to be paid by the contestant).

"Discussing Clark I and Clark II, the Court in Bleidt explained:

"'[Clark II] involved an allowance of attorneys' fees under Title 61, § 59, Alabama Code of 1940, the predecessor of Code of 1975, § 43-1-76 [now § 43-8-196]. There this Court was dealing with a prior will contest which had been successful but which, upon review, was found to be based upon insufficient evidence. [Clark I]. In [Clark II] dealing with the award of attorneys' fees against the contestant as costs, this Court referred to [Clark I] as "altogether without merit," or frivolous. Therefore, this Court held the trial court had erred in decreeing that the executor's attorneys be paid from the residuary estate "and in not taxing such fee against the contestants as costs in the will contest suit." [Clark II], supra, 287 Ala. 42, 48, 247 So. 2d 361. In other words, this Court construed § 59 (now [§ 43-8-196]) as authorizing attorneys' fees against the contestant who fails only when the contest is without merit.

13

That is, if there is some credible evidence offered by the contestant in support of the theory of the contest, the contestant is not to be charged with paying the attorneys' fees of the proponent.

"'An examination of this record convinces us that this contest was not "altogether without merit." To the contrary, the contestant adduced credible evidence of undue influence and forgery. The proponents of the will produced evidence tending to show an absence of undue influence or forgery. The trial court properly allowed the jury to resolve the conflict created by the evidence of both sides, and the jury found for the proponents. But the mere fact that the contestant lost could not under § 43-1-76 [now § 43-8-196] and Clark [II], 287 Ala. 42, 247 So. 2d 361 (1971), be used to charge the contestant with the proponents' attorneys' fees as part of the costs.'

"412 So. 2d at 771-72 ….

"In this case, we are presented with no credible evidence in support of any ground upon which Jack challenged [the] will. The trial court erred, therefore, in refusing to award Willis fees and costs."

91 So. 3d at 670-71 (some emphasis added; footnote omitted).

It is thus true that both McGee and Bleidt stated that the issue of attorneys' fees in a will contest hinges on whether the contestant presented "credible evidence." McGee, 91 So. 3d at 671; Bleidt, 412 So. 2d at 771. However, read in context, those cases convince us that the issue of attorneys' fees in a will contest is not truly an issue of whether the

14

contestant actually presented <u>credible</u>, i.e., believable, evidence but, instead, is an issue of whether the contestant presented evidence that was <u>sufficient</u> to create a question of fact for a jury to resolve. Indeed, <u>Bleidt</u> rather clearly indicated that the will contestant in that case could not be charged with paying the will proponents' attorneys' fees because the case had been decided by a jury's resolution of conflicting evidence. Conversely, in <u>McGee</u> this Court held that attorneys' fees should have been awarded to the will proponent in a case that was resolved in part <u>by a summary judgment</u> and in part <u>by a judgment as a matter of law</u> following the presentation of the contestant's evidence. In other words, the will contestant in <u>McGee</u> did not present any evidence that was <u>sufficient</u> to get his case before a jury.

Caselaw from the Court of Civil Appeals -- cited by Harper in his brief -- also indicates that the issue of attorneys' fees in a will contest is one of sufficiency of the evidence, not credibility of the evidence. In <u>Hester v. Cox</u>, 682 So. 2d 1381 (Ala. Civ. App. 1996), the Cox family filed a will contest against the Hester family. Following the denial of the Hesters' motion for a summary judgment, the case proceeded to a jury trial, at which the Hesters prevailed. The Hesters then moved for an award of

attorneys' fees, but the trial court denied that motion. In affirming the denial of attorneys' fees, the Court of Civil Appeals stated:

> "Section 43-8-196, Code 1975, allows for the award of attorney fees against a contestant if the contestant fails in the will contest. In construing the predecessor to § 43-8-196, our supreme court held as follows: '[I]f there is some credible evidence offered by the contestant in support of the theory of the contest, the contestant is not to be charged with paying the attorneys' fees of the proponent.' Bleidt v. Kantor, 412 So. 2d 769[,771] (Ala. 1982).
>
> "In denying the Hesters' request for attorneys' fees, the trial court explained, 'The Court does not find that the contest of the will and challenge to the validity of the trusts were altogether without merit or conducted in bad faith, or that proponents are otherwise legally or equitably entitled to attorneys' fees.'
>
> "We find that the trial court's denial of the Hesters' motion for a summary judgment and its denial of both of their motions for a directed verdict support the trial court's finding that the contest was not meritless or conducted in bad faith."

682 So. 2d at 1382 (emphasis added). Similarly, in Bailey v. Sawyer, 991 So. 2d 725, 735 (Ala. Civ. App. 2007), the Court of Civil Appeals held:

> "Because we find that Bailey and Pearson offered credible evidence in support of their theory of this will contest, we conclude that the trial court did not err in failing to award attorney fees in this case. This conclusion is supported by the trial court's denial of Charles's motion for a judgment as a matter of law after Bailey and Pearson's case-in-chief and the trial court's denial of Charles's motion to award attorney fees."

16

(Emphasis added.) Once again, these cases indicate that the appellate court's focus was not on whether the will contestants' evidence was actually <u>credible</u> in the sense of being believable but, instead, was on the fact that the evidence was <u>sufficient</u> to create a question of fact for the jury to resolve.

It appears that this Court's use of the phrase "credible evidence" in <u>Bleidt</u> (and repeated in <u>McGee</u>) was an unfortunate choice of words. What the Court should have said -- and what the Court essentially <u>did say</u> with its analysis -- is that the question to ask in determining whether to award attorneys' fees in a will contest is whether the contestant presented <u>sufficient</u> evidence to support his or her claim, not whether the contestant presented <u>credible</u> evidence. In fact, we have not found an Alabama case in which a trial court concluded that the evidence was sufficient to submit a will contest to a jury and then, following an adverse verdict against the contestant, awarded attorneys' fees to the prevailing party based on the fact that the contestant's evidence was not "credible." This is for good reason. A case that has enough conflicting evidence to raise a question of fact for a jury to resolve is certainly not "frivolous" or "'altogether without merit,'" which is the standard that this Court applied in <u>Bleidt</u> and

17

McGee. <u>Bleidt</u>, 412 So. 2d at 771 (citation omitted).

According to our caselaw, the purpose of § 43-8-196 is not to punish will contestants for bringing will contests that, while unsuccessful in front of a jury, are supported by sufficient evidence. Rather, our caselaw dictates that the purpose of § 43-8-196 is to prevent will contests that are "frivolous" or "'altogether without merit.'" <u>Bleidt</u>, 412 So. 2d at 771 (citation omitted). If will contestants know that they will be saddled with paying their opponent's hefty attorneys' fees following a losing effort, based solely on a trial court's subjective credibility determinations rendered <u>after a jury's verdict</u>, they might be less likely to bring a will contest -- even one that is supported by evidence that a jury might find persuasive.

In this case, Harper's will contest was supported by evidence that was sufficient to create a question of fact for a jury to resolve. Indeed, the trial court more than once denied a motion for a judgment as a matter of law during the course of the trial, and at one point the court expressly stated that it believed the evidence had created "a jury issue" as to the validity of the two wills being litigated. Thus, as was the case in <u>Bleidt</u>, we do not think this Court (or the trial court) can say that Harper's will

contest was "frivolous" or "'altogether without merit.'" 412 So. 2d at 771 (citation omitted). Rather, Harper presented evidence to support his claim that the 1995 will is invalid, and Taylor presented evidence indicating that the 2007 will is invalid. The trial court "allowed the jury to resolve the conflict created by the evidence of both sides, and the jury found for [Taylor]. But the mere fact that [Harper] lost could not … be used to charge [him] with [Taylor's] attorneys' fees as part of the costs." Id. at 771-72. We see no difference between this case and Bleidt.

## IV.

For the foregoing reasons, we reverse the trial court's order requiring Harper to pay Taylor's attorneys' fees.

REVERSED.

Cook, McCool, and Parker, JJ., concur.

Bowden, Special Justice,* concurs in part and concurs in the result, with opinion.

Bryan, J., concurs in the result.

---

*Judge Benjamin M. Bowden of the Alabama Court of Civil Appeals was appointed to serve as a Special Justice in regard to this appeal.

Sellers, J., concurs in part and dissents in part, with opinion, which Stewart, C.J., and Wise, J., join.

Shaw, J., dissents, with opinion.

Mendheim, J., recuses himself.

BOWDEN, Special Justice (concurring in part and concurring in the result).

I concur with all aspects of the main opinion except for the analysis in Part III.

SELLERS, Justice (concurring in part and dissenting in part).

I concur in Part II of the main opinion, which addresses the jurisdiction of the Monroe Circuit Court ("the trial court") to enter the order under review, but I dissent from Part III of the main opinion, which reverses the trial court's order directing William C. Harper ("Harper") to pay the attorney fees and costs incurred by his sister, Alice Lynn Harper Taylor ("Taylor"), for successfully defending the 1995 will of their mother, Alice Earl Harper. Attorney fees are recoverable under Alabama law as part of the costs of an action only when they are authorized by statute, provided for in a contract, or can be awarded by special equity. Reynolds v. First Alabama Bank of Montgomery, N.A., 471 So. 2d 1238 (Ala. 1985). Here, the trial court concluded that Taylor was entitled to an award of attorney fees and costs pursuant to § 43-8-196, Ala. Code 1975. That Code section provides that the "costs of any [will] contest … must be paid by the party contesting if he or she fails; otherwise, it must be paid by the plaintiff or out of the estate." This Court recently reaffirmed that the word "costs," as that term is used in § 43-8-196, includes attorney fees. See Boykin v. Land, 428 So. 3d 9 (Ala. 2025). This Court has construed the phrase "if he or she fails" to mean that, "if there is some credible

22

evidence offered by the contestant in support of the theory of the contest, the contestant is not to be charged with paying the attorneys' fees of the proponent." Bleidt v. Kantor, 412 So. 2d 769, 771 (Ala. 1982) (emphasis added). See also McGee v. McGee, 91 So. 3d 659, 670 (Ala. 2012) (same). Here, the trial-court judge, who presided over the two trials and, thus, is in the best position to judge the credibility of the testimony, concluded that Harper's challenge to the 1995 will "was not supported by credible evidence." The main opinion tends to imply that, because the trial-court judge allowed the case to go to the jury, there was some set of facts to credibly support Harper's claims. But that implication or assumption is belied by the trial court's actions, as expressed in its order. As indicated, the trial court made a specific finding that Harper's will contest was not based on credible evidence. Next, the trial court based its computation of fees and costs on evidence, documentary and in-person, from three attorneys, as well as consideration of the factors set forth in Peebles v. Miley, 439 So. 2d 137 (Ala. 1983). Thus, the trial court's order contains findings to support its significant assessment of attorney fees and costs, not against the estate, but against Harper. The trial court's actions were not cursory, but represented a thorough review based on extensive and

23

expensive litigation of which the trial-court judge, having presided over the two trials, had personal knowledge. Because the trial court clearly had the statutory authority to award Taylor attorney fees and costs when Harper was unsuccessful in challenging the 1995 will, I would affirm its order. Thus, I respectfully dissent from Part III of the main opinion.

Stewart, C.J., and Wise, J., concur.

SHAW, Justice (dissenting).

Section 43-8-196, Ala. Code 1975, in pertinent part, states that, in a will contest, "[t]he costs of any contest under the provisions of this article [i.e., Ala. Code 1975, Title 42, Chapter 8, Article 7] must be paid by the party contesting if he or she fails ...." "Costs" has been deemed to include attorneys' fees, and "if he or she fails" has been deemed to mean that the contestant did not present "some credible evidence" in support of the will contest. McGee v. McGee, 91 So. 3d 659, 670 (Ala. 2012). This interpretation of § 43-8-196 may not be supported by its plain text. Generally speaking, "costs" would not necessarily refer to "attorneys' fees," and the phrase "if [one] fails" means that one did not prevail, which is different from failing to present "some credible evidence." In this case, the main opinion changes the prior interpretation of "if [one] fails" from meaning the failure to present "some credible evidence" to meaning that the contestant did not present "sufficient evidence" to support his or her claim. Stare decisis counsels me to adhere to our prior caselaw interpreting § 43-8-196. But I am not inclined to further adjust the meaning of the Code section if it does not bring us any closer to its plain language.

25

Although William C. Harper argues that he presented sufficient evidence to overcome § 43-8-196, he does not request that we change or rearticulate our interpretation of "if [one] fails" from meaning to fail to present "some credible evidence." Specifically, Harper argues that he presented credible evidence, but he does not argue that the "credible evidence" test in our prior caselaw should be changed to a "sufficient evidence" test in the way the main opinion frames it. Generally, this Court does not reverse a trial court's judgment on a ground not raised on appeal. Hart v. Pugh, 878 So. 2d 1150, 1157 (Ala. 2003) ("[W]hen we are asked to reverse a lower court's ruling, we address only the issues and arguments the appellant chooses to present.").

The main opinion sub silentio overrules numerous prior decisions stating the "credible evidence" interpretation of the Code section. Harper does not ask this Court to overrule caselaw on that ground. As numerous cases note, we do not overrule prior precedent without such a request. See, e.g., Eickhoff Corp. v. Warrior Met Coal, LLC, 265 So. 3d 216, 224 (Ala. 2018) (refusing to overrule controlling caselaw with no request to do so). Harper does ask this Court "to overrule the cases that read 'costs' to include fees" and makes a compelling argument to do so. Harper's brief

26

at 52. However, my readiness to accept this request is tempered by the fact that this Court recently adhered to the "long-standing line of precedent construing 'costs[]' ... to include attorney fees" for purposes of § 43-8-196. <u>Boykin v. Land</u>, 428 So. 3d 9, 21 (Ala. 2025).

In determining whether there is sufficient evidence, that is, substantial evidence, to create a question of fact, the trial court generally does not consider whether the testimony was "credible." In ruling on a motion for a judgment as a matter of law ("JML"), a court instead views the evidence in the light most favorable to the nonmovant. <u>Butler v. Town of Argo</u>, 871 So. 2d 1, 11-12 (Ala. 2003). Whether testimony is "credible," however, is generally a determination for the jury: "It is settled law that the credibility of the witnesses is the province of the jury." <u>Floyd v. Broughton</u>, 664 So. 2d 897, 900 (Ala. 1995). Testimony that the trial court believes is wholly uncredible might still be substantial evidence for purposes of denying a motion for a JML because the trial court does not consider the testimony's credibility. Instead, the jury will later determine that credibility. Thus, a contestant's evidence consisting of uncredible testimony may still allow the contestant to survive a motion for a JML. A contestant's evidence that consists of uncredible testimony,

27

though it may be substantial evidence, should not survive the test of §
43-8-196. I would decide whether the trial court was correct in
determining that there was no credible evidence instead of looking to
whether there was substantial evidence. I thus respectfully dissent.